This action was brought to recover the aggregate amount of two policies of insurance, one for $500 and the other for $154, which were issued, in July and September, 1908, by the defendant company on the life of Emma Davis, the daughter of the plaintiff. The case was tried upon issues to which there was no exception and which, with the answers thereto, were as follows:
1. Did the insured, Emma Davis, represent in her application for the policy for $500 that she had never had pneumonia? Answer: Yes.
(114) 2. Had Emma Davis had pneumonia prior to the filing of her application for the policy for $500? Answer: No.
3. Did the insured, Emma Davis, represent in her application for the policy for $500 that she had never had consumption? Answer: Yes.
4. Had the insured, Emma Davis, prior to said application ever had consumption? Answer: No.
5. Did the insured, Emma Davis, in her application for the policy for $500 represent that she had not been under the care of any other physician within two years for any serious illness than Dr. Tull for chills, 19 May, 1908? Answer: Yes.
6. Was the insured under the care of any physician within two years for any serious illness other than Dr. Tull for chills, 19 May, 1908? Answer: No.
7. Did the insured in her application for the policy for $154 represent that she had not been attended by a physician for any serious disease or complaint? Answer: Yes. *Page 93 
8. Had the insured, Emma Davis, prior to said application, been attended by any physician for any serious disease or complaint? Answer: No.
9. What amount, if any, is plaintiff entitled to recover of defendant on said policies? Answer: $654, with interest from 9 June, 1909.
Judgment was given for the plaintiff, and defendant appealed.
It appears that in the application for the policy the insured represented and stated that she had never had pneumonia or consumption, nor had she ever been treated by a physician for any serious illness. She was not able to pay the premium on the policy or even to take out the policy, and her father did this for her, and after her death, as her next of kin and the beneficiary under the policy, he filed with the company a proof of loss, in which he stated that she had an attack of pneumonia in February, 1906, prior to the date of her application, of about three weeks duration, and had chills and fevers occasionally all the time. There was evidence, we think, to show that this was a mistake, though it must be admitted that the state of the entire evidence was such as to justify the claim of the defendant's counsel that (115) it preponderated in his favor. But we are not permitted to interfere with verdicts, by determining with whom the mere weight of the evidence lies. If there is any testimony fit for the jury to consider upon the issue made by the pleadings, we must abide by the verdict and consider and decide only upon questions or inferences of law. The court charged the jury, substantially, with reference to the statement of the plaintiff in the proof of loss, or in what is called in the case his written claim for the insurance, that it was prima facie evidence of the fact that the deceased had pneumonia in 1906 and was otherwise ill, as stated, but that it devolved upon the plaintiff to satisfy them, upon all the evidence, that she did not have pneumonia prior to the date of her application. The defendant's counsel, in their able and learned brief, state that "It was around this point that the battle waged from the beginning to the end of the case." They requested the court to charge that there was not sufficient evidence to rebut this prima facie case made by the statement of the plaintiff in the application. Assuming, for the sake of discussion, that the judge laid down a correct rule of law, as to the force and effect of plaintiff's statement in the proof of loss, as to the deceased having had pneumonia — and we do not mean to question it in the least — we yet are of the opinion that there was evidence to rebut or overthrow the prima facie case thus raised. There was testimony, for example, which tended to show that the plaintiff was mistaken and was speaking from hearsay, and not from his personal knowledge, when he made the statement, besides other competent and sufficient proof that the insured had not been a victim of pneumonia or consumption, or any *Page 94 
other serious malady. The case, in this respect, was fairly submitted to the jury by Judge Justice, with his accustomed lucidity and accuracy in stating legal principles, as applied to the essential facts of a case; and, moreover, in this particular instance the charge of his Honor, if anything, placed the burden a shade too much upon the plaintiff, for where a prima facie case is established by the proof of a single fact or a series or concatenation of facts — a chain of evidence, as we call it — it is, at last, as we will see has been said by the (116) Supreme Court of the United States, only proof, though it may be strong, of the ultimate fact or facts to be shown as necessary to the party's recovery or success. It is not conclusive, but must be submitted to the jury, either by itself or along with the other evidence, for them to find the ultimate, final, and constituent facts which, in law, are the true basis of recovery, whether by plaintiff or defendant. In other words, and to make this doctrine clearer, if possible, the prima facie
case is only evidence, stronger, to be sure, than ordinary proof, and the party against whom it is raised by the law is not bound to overthrow it and prove the contrary by the greater weight of evidence, but if he fails to introduce proof to overcome it, he merely takes the chance of an adverse verdict, and this is practically the full force and effect given by the law to this prima facie case. He is entitled to go to the jury upon it and to combat it, as being insufficient proof of the ultimate fact under the circumstances of the case, but he takes the risk in so doing, instead, of introducing evidence. We believe this is thoroughly in accord with our authorities.
In Shepard v. Telegraph Co., 143 N.C. 244, the present Chief Justice, citing Board of Education v. Makeley, 139 N.C. 35, and adopting as a correct statement of the law what is quoted in that case from 1 Elliott on Evidence, sec. 139 (not only a standard work, but one of the best we have on the law of evidence), said: "The burden of the issue, that is, the burden of proof, in the sense of ultimately proving or establishing the issue or case of the party upon whom such burden rests, as distinguished from the burden or duty of going forward and producing evidence, never shifts; but the burden or duty of proceeding or going forward often does shift from one party to the other, and sometimes back again. Thus, when the actor has gone forward and made a primafacie case, the other party is compelled in turn to go forward or lose his case, and in this sense the burden shifts to him. So the burden of going forward may, as to some particular matter, shift again to the first party in response to the call of a prima facie case or presumption in favor of the issue is not bound to disprove the actor's case by (117) a preponderance of the evidence, for the actor must fail if, upon the whole evidence, he does not have a preponderance, no matter *Page 95 
whether it is because the weight of evidence is with the other party or because the scales are equally balanced." The Chief Justice, in commenting upon this rule, stated the law of this State thus: "The burden of the issue as to negligence was upon the plaintiff. If no evidence had been offered in rebuttal, the court might have told the jury that if they believed the evidence, to answer that issue `Yes'. But when evidence was offered in rebuttal, it was not incumbent upon the defendant to prove it by a preponderance of testimony, but upon all the testimony it was the duty of the plaintiff to satisfy the jury by a preponderance of the evidence that the defendant was guilty of negligence." This agrees with what was said inWomble v. Grocery Co., 135 N.C. 474, and Stewart v. Carpet Co., 138 N.C. 66, and Winslow v. Hardwood Co., 147 N.C. 277, except in this, that the jury must be satisfied upon the prima facie case of the right to a verdict.
So in this case the judge might well have submitted the prima facie
case alone to the jury, if there had been no other evidence for their consideration; and still he should have charged them that it is not conclusive, but they must say whether it is really according to the truth of the matter, or, to adopt the idea as expressed by the Supreme Court of the United States, a prima facie case is, at the most, merely sufficient proof to establish the fact, and if not rebutted it remains sufficient, but is not conclusive. In the recent case of Bailey v. Alabama, 219 U.S. 219, the Court says: "Prima facie evidence is sufficient evidence to outweigh the presumption of innocence and, if not met by opposing evidence, to support a verdict of guilty. `It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose.'" But the Court also held that prima facie
evidence is at last only some evidence of the main facts, sufficient, it is true, to support a verdict, but not absolutely controlling upon the jury, who may convict or not upon it, as they may see fit, or who in a civil case, may find a verdict in accordance with it, or, by disregarding it, as being insufficient to convince them, may return the opposite verdict. And so in Bailey v. State, 161 (118) Ala., at p. 78 (same case, the Court says: "It must be borne in mind that the rule of evidence fixed by the statute does not make it the duty of the jury to convict on the evidence referred to in the enactment, if unrebutted, whether satisfied thereby of the guilt of the accused beyond a reasonable doubt or not. On the contrary, with such evidence before them, the jury are still left free to find the accused guilty or not guilty, according as they may be satisfied of his guilt or not, by the whole evidence."
It was objected and argued by defendant's counsel that the court had permitted nonexpert witnesses for the plaintiff to testify that the deceased had never had pneumonia, but we do not think their negative *Page 96 
testimony can bear this construction. They merely said, as we understand them, that they did not know whether or not she suffered from this disease. They did not profess to say, or to give a medical opinion, upon facts known to them or otherwise, as to whether she had pneumonia. A fair interpretation of what they said would lead us to the inference that they simply had not heard of any such thing.
The testimony of Dr. Pollock, the medical examiner of the company, that he recommended the risk, not upon her statement that she had never had pneumonia or consumption, but upon his own examination and diagnosis of her physical condition, was clearly competent. Of course, as contended by defendant's counsel the question was not whether the medical examiner was influenced in giving his certificate of her physical soundness by any statement she had made, but rather whether the defendant was induced thereby to issue the policy or to enter into the contract of insurance with her, and his testimony was competent and relevant, in this view, to rebut the allegation that she had ever actually been afflicted with the disease mentioned, for he stated, also, that she had not been so affected, and the very fact that he examined and "passed her," in view of the questions asked in the application, was some evidence, under all the circumstances of this case, that she had never suffered from pneumonia or consumption or any other serious disease. We have found
No error.
(119)