## HUFFMAN *v.* STATE OF INDIANA.

[No. 25,792. Filed March 28, 1933. Rehearing denied June 7, 1933.]

Robert E. Proctor, for appellant.

James M. Ogden, Attorney General, and E. Burke Walker, Deputy Attorney General, for the State.

TREANOR, C. J.—Appellant was indicted[1] for and convicted of violating §6 of ch. 201, Acts 1927, p. 578,

Note 1. "The Grand Jury of the County of Elkhart, upon their oath do charge and present that on or about the 13th day of October, 1927, and thereafter, at the County of Elkhart, in the State of Indiana, one Walter A. Huffman did then and there unlawfully, fraudulently and feloniously, with intent to defraud the Farmers and Merchants Bank, of Foraker, Indiana, make, draw, utter and deliver to said Farmers and Merchants Bank a certain check and order for the payment of money upon the South Side State Bank of Elkhart, Indiana, said check being of the following tenor, to-wit:

§2949, Burns Ann. Ind. St. Supp. 1929². He assigns as error that the trial court erred in overruling his motion for a new trial, and under Points and Authorities presents under six propositions the errors complained of, which, he contends, entitled him to have·his motion for new trial sustained.

The first of these relate to the admission in evidence over appellant's objection, of exhibits consisting of certain certificates of deposit, certificate of deposit records, cashier's register, remittance ledger, deposit slips, checks, cashier's checks and ledger sheets which tended to establish that the appellant ·had issued to the Farmers and Merchants Bank of Foraker, Indiana, both before and after the issuance of the check which constituted the basis of this prosecution, a number of checks, some drawn on the South Side State Bank of Elkhart, Indiana, and some drawn on the St. Joseph

"Huffman Improvement Co., Inc.         No. 619
   Home Builders
      901 S. Main Street, Elkhart, Ind. Oct. 13, 1927.   192
Pay to the order of Farmers and Merchants Bank   $2500.00
To South Side State Bank        $2500*and*00*cts*    Dollars
71-1238   Elkhart Indiana.   Huffman Improvement Co., Inc.
                    By Walter A. Huffman, Secy.

" 'This check is issued in full payment of account shown hereon and payee accepts it as such by endorsement hereof.'

"He, the said Walter A. Huffman, then and there knowing that said Huffman Improvement Company as maker of said check had not at the time of such making, drawing, uttering and delivering of said check to said Farmers and Merchants Bank sufficient funds and credit with said South Side State Bank, of Elkhart, for the payment of said check in full upon its presentation, and said Walter A. Huffman did then and there by color and aid of said check obtain from said Farmers and Merchants Bank of Foraker, Indiana, credit in the name of and for the benefit of said Huffman Improvement Company and said Walter A. Huffman with said Farmers and Merchants Bank in the sum of twenty-five hundred dollars ($2,500.00) and· money and property of the value of twenty-five hundred ($2,500.00) dollars, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

*Note 2.* "Whoever with intent to defraud by obtaining money, merchandise, property, credit, or thing of value, although no express representation is made in reference thereto, or who, in the payment of any obligation, shall make, draw, utter or deliver any

Valley Bank of Elkhart, Indiana, and that when such checks cleared through banking channels to the respective banks on which they were drawn there were insufficient funds on deposit in drawer's account to pay such checks. Appellant contends that these exhibits "were not relevant to the guilt or innocence of the accused, and were in fact evidences of other offenses alleged to have been committd before and subsequent to the date stated in the indictment." Assuming that appellant is correct in his contention that the exhibits objected to constituted "evidences of other offenses alleged to have been committed" it does not follow that they were improperly admitted. In *Gears* v. *State* (1932), 203 Ind. 380, 180 N. E. 585, this Court said:

> "There is no reason why a court should admit evidence of offenses that are entirely unrelated to the offense for which a defendant is on trial. But we have a different problem when the relation which exists between the other offenses and the one under investigation is such that evidence of defendant's participation in the other offenses is also evidence tending to show that defendant is guilty of the offense charged. . . . We consider that this court has adopted, and correctly so, the rule that evidence of the commission of other offenses is admissible, not only to negative an innocent intent, but also to prove that the defendant committed the act constituting the crime with which he is charged; and this evidence is admissible for the latter pur-

check, draft or order for the payment of money upon any bank, depository, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in or credit with such bank, depository, person, firm or corporation, for the payment of such check, draft or order in full upon its presentation, shall, on conviction, be imprisoned in the state prison for not less than one nor more than ten years: *Provided, however,* That where the money, merchandise, property, or thing of value obtained is less than twenty-five dollars, the punishment shall be the same as the punishment prescribed by law for petit larceny. The making, drawing, uttering or delivering of such check or draft or order as aforesaid, shall be prima facie evidence of intent to defraud. The word "credit" as used herein, shall be construed to mean an arrangement or understanding with the bank, depository, person, firm or corporation, for the payment of such check, draft or order."

pose either because it tends to identify the defendant as the perpetrator of the offense or because it shows a scheme or plan on the part of the defendant to commit a series of offenses, one of which is the offense in question."

In the instant case the jury's consideration of the evidence objected to was limited by an instruction to the question of appellant's intent to commit the particular offense charged. In *Crum* v. *State* (1897), 148 Ind. 401, 47 N. E. 833, it was said:

"It is true that such evidence of similar offenses is more frequently received in cases of forgery and counterfeiting than in any others. This, however, is only because in such cases the commission of other like acts tends more frequently to show the intent with which the act charged was done. In principle there can be no reason why in any case the intent with which an act was done may not be proved by competent and pertinent evidence, even though proof may thus incidentally be made of other offenses."

But appellant contends that such evidence is not admissible for that purpose unless the defendant offers evidence controverting the existence of intent to defraud, because the statute defining the offense with which appellant was charged provides that "the making, drawing, uttering or delivering of such check . . . shall be prima facie evidence of intent to defraud." Appellant's contention amounts to saying that the effect of the above quoted provision of the statute is to limit the state, in its proof of intent to defraud, to introducing only the facts which under the statutory provision constitute "prima facie evidence of intent to defraud" and to forbid the introduction of any other facts which ordinarily would be competent evidence of the intent of the accused, unless and until the defendant should introduce evidence denying the presence of intent to defraud. While a verdict under the

statute may be upheld as being sustained by sufficient evidence, where prima facie evidence has been introduced, yet prima facie evidence does not require a verdict or shift from the state the burden of proving the guilt of the defendant beyond a reasonable doubt.[3]

The facts which the statute declares constitute prima facie evidence of intent to defraud would have the same effect without the statute; and we see no more reason for limiting the state to proof of facts which are declared by statute to be prima facie evidence of intent than we do for limiting it to proof of facts which the trial court, without a statutory declaration, could say constitute prima facie evidence of intent. We consider the rule thoroughly settled in this jurisdiction that any relevant evidence, in other respects competent, is not rendered incompetent because it may tend to prove a defendant guilty of offenses other than the one under investigation; and we do not recognize any qualification of this rule in case of offenses where intent may be inferred from the act itself. This was clearly stated by Myers, J., speaking for the Court in *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235, 237:

*Note 3.* "The words 'prima facie,' when used to describe evidence, *ex vi termini* imply that such evidence may be rebutted by competent testimony. *Meadowcroft* v. *People*, 163 Ill. 56, 45 N. E. 991, 35 L. R. A. 176, 54 Am. St. Rep. 447. The term 'prima facie evidence' implies evidence which may be rebutted and overcome (*People* v. *McBride*, 234 Ill. 146, 84 N. E. 865, 123 Am. St. Rep. 82, 14 Ann. Cas. 994), and simply means that in the absence of explanatory or contradictory evidence the finding shall be in accordance with the proof establishing the prima facie case. Such a rule does not change the burden of proof, for, when all of the evidence introduced in the case is submitted, the case is to be determined upon the whole evidence." *Morrison* v. *Flowers* (1923), 308 Ill. 189, 139 N. E. 10.

"Of course, a prima facie showing does not necessarily mean that the plaintiff is entitled to recover. It is sufficient to carry the case to the jury (*Brock* v. *Ins. Co.*, 156 N. C. 112, 72 S. E. 213), and it is for the jurors to say whether or not the crucial and necessary facts have been established. *Speas* v. *Bank*, 188 N. C. 524, 125 S. E. 398; *Cox* v. *R. R.*, 149 N. C. 117, 62 S. E. 884." *Dickerson* v. *Refining Co.* (1931), 201 N. C. 90, 97, 159 S. E. 446.

> "To state the exceptions generally it can be said that, when the act constituting the crime has been established, then any evidence tending to show motive, intent or guilty knowledge, if in issue, or evidence which directly or as a natural sequence tends to show the defendant guilty of the crime charged is competent, although it also tends to show him guilty of another and distinct offense."

Insofar as *Shears* v. *State* (1897), 147 Ind. 51, 46 N. E. 331, may be construed as qualifying the rule it was modified by *Crum* v. *State, supra,* by necessary implication; and we now expressly declare that it was so modified.

In the instant case the evidence of appellant's check transactions immediately preceding and following the drawing and delivery of the check numbered 619, State's Exhibit 10, was relevant not only to the issue of intent but also to the question of appellant's alleged knowledge of the insufficiency of funds to pay the check in full upon its presentation; it also tended to show a scheme or plan to issue a series of fraudulent checks.

We agree with appellee that the offense charged is a species of fraud by false pretense. *State* v. *Avery* (1922), 111 Kan. 588, 207 Pac. 838, 28 A. L. R. 453; cited to the contrary by appellant, is not in point. The offense under consideration in that case was properly held not to be "related to the false token, bogus check and false pretense group of crimes" for the reason that under the Kansas Worthless Check Act fraud is not an element of the offense therein defined. The following excerpts from the opinion in *State* v. *Avery* are conclusive on that point:

> "The purpose of the statute was to discourage overdrafts and resulting bad banking (*Saylors* v. *State Bank,* 99 Kan. 515, 518, 163 Pac. 454), to stop the practice of 'check kiting' and generally to avert the mischief to trade, commerce and banking which

the circulation of worthless checks inflicts. Although the statute tends to supress fraud committed by the worthless check method, the evils referred to are quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense. . . .

"In this instance it seems clear that fraudulent intent was purposely omitted from the enumeration of elements of the crime."

Appellant objected to the admission of certain exhibits, the ground of objection being that the notary who protested these exhibits did not comply with the law of Indiana. The exhibits were checks and irregularity in protesting, or even failure to protest, could not affect the admissibility of the checks. The offense was complete when the appellant issued the check.

In support of his point "that the verdict of the jury is not sustained by sufficient evidence" the appellant makes the following statement:

"Without the aid of the proof of other offenses covered by all of State's exhibits, with the exception of State's Exhibits Ten and Fifty-three (10 and 53), there is no proof of the *corpus delicti,* no *prima facie* case was made by the State and there was no proof that an offense was committed for the reason that the evidence claimed shows that on October 13, 1927, the date alleged in the indictment that the Huffman Improvement Company, the maker of said check, State's Exhibit No. 10, had sufficient funds and credits in the South Side State Bank, and the evidence clearly shows that upon said day the appellant's company had a balance at the beginning of the day's business of $23.86, and that they deposited $5,397 on that day, withdrew $5,500, and at the close of the said day had a balance of $460.86, and that at no time during the day was the account of the Huffman Improvement Company overdrawn, and that even on the day following, October 14, 1927, the record shows that at the beginning of the day's business there was a balance to their credit of $460.88, they deposited

$8,298, and withdrew $8,500, and had a balance at the end of the day's business of $258.86."

The *corpus delicti* was established when sufficient evidence was introduced to show that the check upon which the indictment rested had been made, drawn, uttered and delivered to the Farmers and Merchants Bank of Foraker for the purpose of obtaining credit to the amount of the check. We agree, however, that appellant is correct in his contention that a prima facie case was not made until the State introduced the evidence of his transactions with the Farmers and Merchants Bank of Foraker, the St. Joseph Valley Bank and the South Side State Bank of Elkhart. This evidence clearly justified the jury in concluding that when the appellant delivered the allegedly fraudulent check for the purpose of obtaining credit with the Foraker bank he knew that he had not sufficient funds in, or credit with, the drawee, the South Side State Bank of Elkhart, for the payment of such check in full upon presentation. The prima facie case of intent to defraud could not exist until there was evidence of appellant's knowledge of the insufficiency of funds or credit to pay the check upon presentation. The bank records, cancelled checks, etc., revealed that appellant was drawing checks on the South Side State Bank in favor of the Huffman Improvement Company and depositing these checks in the Farmers and Merchants Bank of Foraker; meanwhile he was obtaining deposit credit in the South Side State Bank by depositing therein cashier's checks and certificates of deposit issued by the Farmers and Merchants Bank of Foraker against the credit created by the deposit of the checks drawn on the South Side State Bank. The evidence disclosed that a check drawn on the South Side State Bank and deposited in the Farmers and Merchants Bank of Foraker would reach the drawee bank in from four to six days. The appellant had acted

as cashier of the Farmers and Merchants Bank for a period of over two years and the jury must have concluded that he knew that a check drawn on the South Side State Bank of Elkhart and deposited in the Farmers and Merchants Bank of Foraker on the 13th of October would not reach the drawee bank before the 17th or 18th of October. Consequently there is no particular merit in appellant's insistence on the materiality of the fact that the record of the South Side State Bank shows a balance to the deposit-credit of appellant on the 13th and 14th of October. The condition of a drawer's account at the time a check is issued is not conclusive as to the drawer's knowledge or lack of knowledge that he has not sufficient funds in or credit with the drawee bank to pay the check in full upon presentation. In order to establish that a defendant is guilty under the fraudulent check act it is necessary to show that at the time he issues the check he has knowledge that he does not have sufficient funds in or credit with the drawee bank to pay the check in full on presentation. He may know that he has funds in the drawee bank to an amount greater than the amount of the check at the time the check is issued, but if he knows that he has already drawn checks against that fund sufficient to deplete it before the last check can be presented for payment he has knowledge, at the time of issuing the last check, that he does not have sufficient funds in the bank to pay the last check in full upon presentation. The evidence in the instant case justified the conclusion that appellant, when he drew check numbered 619 (Exhibit 10), knew he had already issued enough checks to exhaust the funds to his credit in the South Side State Bank several days before check 619 would be presented for payment; further the reasonable inference from the evidence was that the appellant expected to obtain deposit-credits in the South Side State Bank to pay check 619 upon presentation by

depositing more fraudulent checks, drawn on the South Side State Bank, in the Farmers and Merchants Bank of Foraker and, after obtaining certificates of deposit or cashier's checks from the Farmers and Merchants Bank of Foraker on the credit of the fraudulent checks by then depositing these certificates of deposit and cashier's checks in the South Side State Bank. It may be that appellant had such confidence in the continued success of his fraudulent scheme that he confidently believed that when check 619 should be presented it would be paid; but that fact in itself shows that he knew, at the time of issuing check 619 that he did not have sufficient funds in or credit with the South Side State Bank to pay this check in full on presentation.

The evidence was sufficient to sustain the verdict of the jury.

Appellant urges that the title of the act which contains the fraudulent check section does not express the subject of fraudulent checks. The title is: "An act concerning public offenses, and repealing all laws and parts of laws in conflict with the provisions of this act." The body of the act covers six different offenses, each in a separate section. In *Hedderich* v. *State* (1885), 101 Ind. 564, 1 N. E. 47, 51 Am. Rep. 768, it was held that a title "an act concerning public offenses and their punishment" was "sufficiently comprehensive to include all offenses of a public nature." We approve that holding and consider it decisive of the constitutionality of the act involved in the instant case.

The trial court did not err in overruling appellant's motion for new trial. Judgment affirmed.