WILLIAM EDWARD COOK v. ROBERT LANIER, T/A LANIER'S WHOLE-
SALE MEATS, AND HUBERT PERRY.

(Filed 4 May, 1966.)

**1. Malicious Prosecution § 1—**
        To make out a case of malicious prosecution, the plaintiff must allege
and prove that the defendant instituted, or procured, or participated in, a
criminal prosecution against him maliciously, without probable cause,
which ended in failure.

**2. Malicious Prosecution § 6—**
        The dismissal of a criminal proceeding by reason of the failure of the
complainant to appear and prosecute is a sufficient termination thereof to
support an action for malicious prosecution based thereon.

**3. Malicious Prosecution § 4—**
        In an action for malicious prosecution, probable cause does not depend
upon the guilt or innocence of the person accused but upon whether de-
fendant had reasonable ground for suspicion, supported by circumstances
sufficiently strong in themselves to warrant a cautious man in the belief
that the accused is guilty of the offense of which he is charged.

**4. Malicious Prosecution § 5—**
        In an action for malicious prosecution, malice may be inferred from
want of probable cause.

**5. Trial § 23—**
        A *prima facie* showing takes the case to the jury but does not compel a
recovery, it being for the jury to determine whether or not the crucial
and necessary facts have been established.

**6. Malicious Prosecutions § 11— Evidence held sufficient for jury on
question of liability of principal and agent for malicious prosecution.**
        Evidence that plaintiff gave defendant a paper writing in the form of a
check for merchandise delivered, with the understanding that it would not
be presented for payment but was to constitute a mere memorandum of
the debt, that plaintiff thereafter sent defendant principal a cashier's
check for the amount of the debt, which was endorsed by the principal
and duly paid, and that thereafter the principal requested the agent to
swear out a warrant against the plaintiff for issuing a worthless check,
that the agent did so and that the prosecution was dismissed for failure
of the complainant to appear and prosecute, *held* sufficient to make out a
*prima facie* case of malicious prosecution in an action against the principal
and against the agent for the recovery of compensatory damages.

**7. Damages § 10—**
        While punitive damages need not be pleaded *eo nomine*, it is required for
the recovery of punitive damages that plaintiff allege facts tending to estab-
lish actual malice, or oppression, or gross and wilful wrong or negligence,
or a reckless and wanton disregard of plaintiff's rights. Allegation that
there was wanton and wilful misconduct on the part of defendants states
a mere conclusion of the pleader and cannot supply allegation of the
predicate facts supporting this conclusion.

MOORE, J., not sitting.

APPEAL by plaintiff from *Brock, S.J.*, 31 January 1966 Civil Session of CABARRUS.

Civil action for malicious prosecution.

From a judgment of compulsory nonsuit entered by the court on motion of defendants at the close of plaintiff's evidence, plaintiff appeals.

*Thomas K. Spence for plaintiff appellant.*
*Williams, Willeford & Boger by John Hugh Williams for defendant appellees.*

PARKER, C.J.   The complaint, filed 11 December 1964, alleges in substance: Plaintiff is a resident of Cabarrus County; defendants are residents of Davidson County. On 28 September 1964 defendant Hubert Perry, acting in the course and scope of his employment as an employee of defendant Robert Lanier, T/A Lanier's Wholesale Meats, falsely, maliciously, and without probable cause, swore out a complaint before F. W. Pharr, a justice of the peace for Cabarrus County, against him charging him with making, uttering, issuing, and delivering to another a check on a bank for the payment of $23, he, the said William Edward Cook, knowing at the time of making and issuing said check he did not have sufficient funds on deposit in the bank to pay the same, with intent to cheat and defraud the receiver of the check, which was not paid upon tender to the bank, and no provision had been made for payment of the check, contrary to G.S. 14-106 and G.S. 14-107. Whereupon justice of the peace Pharr issued a warrant for the arrest of plaintiff on the charge set forth in Perry's sworn complaint, and plaintiff was arrested by the sheriff of Cabarrus County by virtue of the warrant. Plaintiff was arraigned and examined by justice of the peace Pharr upon the charges in the complaint and warrant and was fully discharged of said charges and accusations by the justice of the peace. By reason of defendants' actions, plaintiff has been injured in his good name, wounded in his feelings, involved in expenses, and subjected to insult and oppression to his damage in the sum of $8,000. By reason of defendants' wanton and willful misconduct, defendants, and each one of them, are liable to him for punitive damages in the sum of $4,000. Wherefore, the plaintiff prays that he recover from the defendants, and each one of them, a judgment for compensatory and for punitive damages.

Defendants filed a joint answer denying all the allegations of the complaint, except that they admit the residence of the parties.

Plaintiff offered evidence in substance, except when quoted, as

follows: He is 61 years of age, and has resided in Cabarrus County all of his life. During part of the year 1964 he operated a business known as Little Farm Curb Market in Mount Pleasant. In this business he sold meats, sandwiches, fruit, candy, and "stuff like that." While operating this business he obtained some of the goods or merchandise that he sold from Lanier Meat Packing Company. He first began buying goods from Lanier Meat Packing Company when Hubert Perry came to his store. Perry said he was working for Lanier Meat Packing Company, and the truck he was driving had on its side "Lanier Meat." Perry said he would like to have some of his business, and he gave him an order. Thereafter, he bought meats from Perry every week in different amounts. The average purchase was somewhere between $25 and $35 a week. At first he gave him a couple of checks, and afterwards he paid him cash. On a Wednesday night Perry brought him some meat, and asked him if he wanted any meat the next week. He said, "Yes, I'd like to have some . . . I don't have enough money in the bank to take care of a check." Perry said, "You don't need to worry about that, just give me a check and I'll keep it till I come around next week, and you can pay me then." He said, "I ain't got enough money in the bank at the present time to cover the check." Perry said, "I just want something to show where the stuff was sold." Perry left the meat and a crate of eggs, and he gave Perry a check dated 24 June 1964, drawn on the Concord National Bank, payable to Lanier Meats in the sum of $23, signed Little Farm Curb Market, by W. E. Cook. Perry never came back. He had a chance to sell his business and he did. On 16 July 1964 he had Cabarrus Bank and Trust Company to issue a cashier's check payable to Lanier Meat Company in the sum of $23. He sent this check to Lanier Meat Packing Company in July 1964 because he owed it $23 for the check he had given it. This check bearing the endorsement "Lanier Meat Packing Company" was paid by Cabarrus Bank and Trust Company on 28 July 1964. The sheriff's deputies came to his house and served the warrant on him. He was not placed in jail nor required to give bail. He agreed to appear in court at the time stated in the warrant.

Plaintiff offered in evidence, what is called in the record, "Deposition of Adverse Examination of Robert Lanier." In this deposition defendant Robert Lanier testified in substance, except when quoted: He is in the wholesale meat business. He is the only owner of the business known as Lanier's Wholesale Meats. His driver, Hubert Perry, did business with Little Farm Curb Market. He never had any dealings in person with plaintiff; all the dealings of his company with plaintiff were by defendant Perry. He does not keep

the books for his business. The account of the Little Farm Curb Market with his company on 28 September 1964 was paid up other than a bad check. He asked defendant Perry to contact Cook, and see if he would take up the bad check. Perry came back and said that Cook had gone out of business and he could not contact him, and he asked Perry to swear out a warrant against Cook for giving him a worthless check. Later he asked Perry when the trial was going to be. He testified: "He [Perry] told me it had come up and had been thrown out because the check had come through and been signed and already received the check and he didn't meet the Justice of the Peace because he didn't figure it would be necessary. Mr. Perry told me he thought we didn't have anything against Mr. Cook and it wouldn't be necessary for him to appear." He endorsed the cashier's check drawn on Cabarrus Bank and Trust Company dated 16 July 1964, made payable to Lanier Meat Packing Company. He did not realize the cashier's check had been paid. The swearing out of the warrant was an honest mistake.

F. W. Pharr, justice of the peace, testified in substance, except when quoted: He issued the warrant upon which Cook was arrested for giving a worthless check. The warrant was issued by him on 28 September 1964, and defendant Perry signed the warrant. He set the date for trial at 4 p.m. on 19 October 1964, and notified defendant Perry of the trial date. Perry did not appear at the time set for the trial. He testified: "I did not find Mr. Cook guilty of the charges. I dismissed the case for lack of evidence." He testified on cross-examination: "Mr. Perry came in with a bad check which he had been given by Mr. Cook. I took out a warrant against Mr. Cook for Mr. Perry. I didn't set any trial date then. Mr. Cook had made the check good by getting a cashier's check. Since nobody showed up, I figured that it would have been paid, and I dismissed it."

On 1 October 1964 The Concord Tribune had a circulation of 10,490. On page 2A of that paper for Thursday, 1 October 1964, was an item reading as follows: "One arrest. County deputies reported only one arrest: that of William Cook, here, Wednesday. The sixty-year-old Cook, of 30 St. Mary Street, was charged with issuing a worthless check in the amount of Twenty-three ($23.00) Dollars."

To make out a case of malicious prosecution the plaintiff must allege and prove that the defendant instituted, or procured, or participated in, a criminal prosecution against him maliciously, without probable cause, which ended in failure. *Greer v. Broadcasting Co.*, 256 N.C. 382, 124 S.E. 2d 98; *Carson v. Doggett*, 231 N.C. 629, 58 S.E. 2d 609; *Dickerson v. Refining Co.*, 201 N.C. 90, 159 S.E. 446.

The dismissal of the criminal proceeding here by reason of the failure of the complainant to appear and prosecute is a sufficient termination thereof to support an action for malicious prosecution based thereon. 54 C.J.S., Malicious Prosecution, § 57, a; 34 Am. Jur., Malicious Prosecution, § 34.

Probable cause for a criminal prosecution does not depend upon the guilt or innocence of the accused of the crime charged, nor upon the fact as to whether a crime has actually been committed, but depends on the prosecutor's honest belief in such guilt based on reasonable grounds. It is a case of apparent, rather than actual, guilt. *Dickerson v. Refining Co., supra;* 54 C.J.S., Malicious Prosecution, §§ 27 and 28. In North Carolina, and it seems in a large number of jurisdictions, probable cause for a criminal prosecution is defined in the sense in which the term is used in actions for malicious prosecution, in substance, but with some verbal differences, as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is charged. *Dickerson v. Refining Co., supra; Stacey v. Emery,* 97 U.S. 642, 24 L. Ed. 1035; 54 C.J.S., Malicious Prosecution, § 26; 34 Am. Jur., Malicious Prosecution, § 47.

"Probable cause, in cases of this kind [malicious prosecution], has been properly defined as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution." Hoke, J., in *Morgan v. Stewart,* 144 N.C. 424, 57 S.E. 149.

In order to give a cause of action for malicious prosecution, such prosecution must have been maliciously instituted. *Wingate v. Causey,* 196 N.C. 71, 144 S.E. 530; *Stancill v. Underwood,* 188 N.C. 475, 124 S.E. 845; 54 C.J.S., Malicious Prosecution, § 40. Malice alone is not sufficient to support an action for malicious prosecution. *Fowle v. Fowle,* 263 N.C. 724, 140 S.E. 2d 398. Although a want of probable cause may not be inferred from malice, the rule is well settled that malice may be inferred from want of probable cause, *e.g.,* as where there was a reckless disregard of the rights of others in proceeding without probable cause. *Dickerson v. Refining Co., supra;* 54 C.J.S., Malicious Prosecution, § 43.

"Evidence that the chief aim of the prosecution was to accomplish some collateral purpose, or to forward some private interest, *e.g.* . . . to enforce collection of a debt . . . is admissible, both to show the absence of probable cause and to create an inference of malice, and such evidence is sufficient to establish a *prima facie* want of probable cause." Stacy, C.J., in *Dickerson v. Refining Co.,*

*supra; Curley v. Automobile Finance Co.,* 343 Pa. 280, 23 A. 2d 48, 139 A.L.R. 1082, and Annotation thereto; 54 C.J.S., Malicious Prosecution, § 32.

Of course, a *prima facie* showing does not necessarily mean that the plaintiff is entitled to recover. It is sufficient to carry the case to the jury *(Brock v. Insurance Co.,* 156 N.C. 112, 72 S.E. 213), and it is for the jury to say whether or not the crucial and necessary facts have been established. *Speas v. Bank,* 188 N.C. 524, 125 S.E. 398; *Cox v. R. R.,* 149 N.C. 117, 62 S.E. 884. It neither insures nor compels a recovery. *White v. Hines,* 182 N.C. 275, 109 S.E. 31.

"Want of probable cause is regarded as a mixed question of law and fact." *Taylor v. Hodge,* 229 N.C. 558, 50 S.E. 2d 307. ". . . [W]hen the facts are admitted or established, the question of probable cause is one of law for the court." *Carson v. Doggett, supra.*

In *Mitchem v. Weaving Co.,* 210 N.C. 732, 188 S.E. 329, Stacy, C.J., said for the Court:

> "In *Brown v. Martin,* 176 N.C. 31, 96 S.E. 642, Allen, J., delivering the opinion of the Court, said: 'The rule is established in *Stanford v. Grocery Co.,* 143 N.C. 419, that legal malice, which must be present to support an action for malicious prosecution, may be inferred by the jury from the want of probable cause, and that it is sufficient as a basis for the recovery of compensatory damages, but that when punitive damages are claimed, the plaintiff must go further and offer evidence tending to prove that the wrongful act of instituting the prosecution "was done from actual malice in the sense of personal ill will, or under circumstances of insult, rudeness, or oppression, or in a manner which showed the reckless and wanton disregard of the plaintiff's right." ' "

The adverse examination of defendant Lanier offered in evidence by the plaintiff is to the effect that defendant Lanier asked defendant Perry on or about 28 September 1964 to swear out a warrant against plaintiff for giving him a worthless check, and that Perry swore out the warrant as requested. Plaintiff's evidence, considered in the light most favorable to him, would permit a jury to find that when he wrote and delivered the paper writing dated 24 June 1964 in the form of a check to defendant Perry, which is the basis of the criminal complaint and warrant here, it was not intended by either plaintiff or Perry to be a check, and was not in fact a check, because Perry stated, "I just want something to show where the stuff was sold." Plaintiff's evidence would further permit a jury to find that on 16 July 1964 he had Cabarrus Bank and Trust

Company to issue a cashier's check payable to Lanier Meat Company in the sum of $23, and he sent this check to Lanier Meat Packing Company in July 1964 because he owed it $23 for the paper writing in the form of a check he had given to defendant Perry, and that this check bearing the endorsement of Lanier Meat Packing Company was paid by Cabarrus Bank and Trust Company on 28 July 1964. The adverse examination of Robert Lanier, offered in evidence by plaintiff, is to the effect that defendant Lanier testified he endorsed this cashier's check drawn on Cabarrus Bank and Trust Company dated 16 July 1964, made payable to Lanier Meat Company. Plaintiff's evidence also shows the justice of the peace issued the warrant on 28 September 1964, and defendant Perry signed the warrant. Plaintiff's evidence, considered in the light most favorable to him, would permit a jury to find the chief purpose of defendant Perry who swore out the warrant, and of defendant Lanier who requested him to swear out the warrant, was to collect a debt, and that both were acting in concert to collect a debt, and that the defendants were not moved by considerations of the public interest in instituting the criminal prosecution. The prosecution, here in question, ended in failure, as neither Lanier nor Perry appeared to prosecute it when it was set for trial. *Prima facie,* therefore, the prosecution here in question was without probable cause, and malice in the sense in which it is used in actions for malicious prosecutions is inferable from the absence of probable cause. This suffices to carry the case to the jury as against both defendants on the issue of compensatory damages.

While it seems that punitive damages need not be specially pleaded by that name in the complaint, it is necessary that the facts or elements justifying a recovery of such damages be pleaded. Though no specific form of allegation is required, the complaint must allege facts or elements showing the aggravating circumstances which would justify the award of punitive damages, for instance, actual malice, or oppression, or gross and willful wrong or negligence, or a reckless and wanton disregard of plaintiff's rights. *Lutz Industries, Inc. v. Dixie Home Stores,* 242 N.C. 332, 88 S.E. 2d 333, and authorities cited; *Roth v. News Company,* 217 N.C. 13, 6 S.E. 2d 882; 25 C.J.S., Damages, § 133 (1966); 22 Am. Jur. 2d, Damages, § 293; 1 McIntosh, N.C. Practice and Procedure, 2d Ed., § 1079, pp. 600-01.

Construing the complaint here liberally, as we are required to do by G.S. 1-151, it does not contain allegations of facts or elements sufficient to support an award of punitive damages. The allegations of paragraph 7 of the complaint reading, "that by reason of the

premises, there was wanton and willful misconduct for which the defendants, and each one of them, are liable for exemplary and punitive damages," are mere conclusions of the pleader with no allegations of facts or elements in the complaint to support such conclusions, and are not a substitute for essential allegations disclosing factual elements justifying an award of punitive damages.

The judgment of compulsory nonsuit below is

Reversed.

MOORE, J., not sitting.