EDMUNDS, Justice.
In this case, we consider the tort liability of law enforcement agents when their criminal investigation went awry. Defendants Thomas and Deaver are or were at the time of the events in question agents of the State Bureau of Investigation (SBI) who participated in the investigation and prosecution of plaintiff for the murder of his wife. The remaining defendants are or were SBI policymakers responsible for supervising SBI agents, including Thomas and Deaver. After plaintiff was acquitted on grounds of self-defense, he filed a civil complaint against defendants alleging numerous claims, including malicious prosecution and *421 intentional infliction of emotional distress. The trial court granted motions to dismiss filed by all defendants pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, but the Court of Appeals reversed as to these two claims against Thomas and Deaver, reinstating the claims. We conclude that, because probable cause existed for the State to indict plaintiff for first-degree murder, plaintiff’s suit for malicious prosecution necessarily would have failed. Accordingly, we reverse the holding of the Court of Appeals as to this claim. However, we agree with the Court of Appeals that, taken in the fight most favorable to plaintiff, the complaint alleges elements of intentional infliction of emotional distress sufficient to withstand a motion to dismiss. Consequently, we affirm the holding of the Court of Appeals as to this claim.
On 12 September 2007, Kirk Alan Turner (plaintiff) and his friend Gregory Adam Smithson (Smithson) met at plaintiff’s marital residence so Smithson could retrieve some property stored there. While at the home, plaintiff discussed personal matters with his wife Jennifer. During the conversation, Jennifer attacked plaintiff with a large spear, stabbing him multiple times in the thigh and groin area. In reaction, plaintiff pulled a pocketknife from his right front pocket and cut Jennifer twice in the neck, inflicting fatal injuries.
Smithson called 911 and performed CPR on Jennifer until emergency personnel arrived. The Davie County Sheriff’s Office responded to the call and requested the assistance of the SBI. SBI Special Agent E.R. Wall arrived and notified SBI Assistant Special Agent in Charge K.A. Cline that a blood spatter expert would be needed to analyze the scene. Several hours later, Agent Wall called Agent Cline again to suggest that a blood spatter expert might not be heeded after all because closer examination indicated that the blood spatter most likely was caused by arterial spurting from Jennifer’s throat wound.
Two days later, Special Agent Gerald R. Thomas (defendant Thomas) arrived at plaintiff’s home to conduct a blood spatter analysis of the scene. Later that day, he conducted a bloodstain analysis of various articles of clothing collected during the course of the investigation, including a gray T-shirt worn by plaintiff during the incident. Before beginning his examinations, defendant Thomas was informed by SBI Special Agent D.J. Smith that Jennifer apparently stabbed plaintiff with a spear and, in response, plaintiff cut her throat with a pocketknife. Defendant Thomas completed his examinations that same day and about two weeks later presented a written report documenting his findings. The report stated that a large bloodstain on plaintiff’s gray T-shirt “was consistent with a transfer bloodstain pattern” resulting from a bloody hand being wiped *422 on the shirt. The report farther noted several smaller bloodstains that were consistent with blood dripping onto the shirt.
On 13 December 2007, plaintiff was indicted for the first-degree murder of Jennifer. He was initially denied bond and detained for one month before being released on a bond of one million dollars. Plaintiff had to borrow money from family and friends to post his bond and retain defense counsel.
The following allegations are taken from plaintiff’s complaint. After plaintiff was indicted, defendant Thomas met on 15 Januaiy 2008 with SBI Special Agent Duane Deaver (defendant Deaver); Captain Jerry Hartman, lead investigator for the Davie County Sheriff’s Office; a lawyer from the district attorney’s office; and another individual identified in the pleadings only as “Mr. Marks” to discuss both the feasibility of plaintiff’s version of the events and their own theory of the case. Dining this meeting, defendants Thomas and Deaver and their colleagues theorized that plaintiff killed Jennifer for the purpose of carrying out a scheme to avoid a divorce and subsequent equitable distribution proceeding. They additionally theorized that plaintiff stabbed himself with the spear and staged the scene to make the killing look like self-defense.
Plaintiff further alleged that, to prove their theory, defendants Thomas and Deaver needed to show that the bloodstain on plaintiff’s T-shirt was not a mirror image stain from plaintiff’s hand but was instead a transfer pattern consistent with plaintiff having wiped a knife on the shirt. With the alleged approval of defendant Pendergraft, their supervisor, defendants Thomas and Deaver conducted tests for the purpose of “shor[ing] up” this new theory. Defendant Thomas again took samples from various evidentiary items for a second examination but failed properly to label his work in such a way that someone reviewing the evidence would be able to determine the source of each sample. Defendant Thomas also failed to make any record of the new theory. Defendants Thomas and Deaver videotaped their numerous attempts to duplicate with a knife the blood smear on the plaintiff’s T-shirt. After a success, defendant Deaver can be heard on the video saying: “Oh, even better! Holy cow, that was a good one!” and “Beautiful! That’s a wrap, baby!”
Plaintiff further alleged that, following the knife smear test and a second review of the evidence, defendant Thomas created a second written report that altered his initial report by replacing the words “consistent with a bloody hand being wiped on the shirt” with “consistent with a pointed object being wiped on the shirt.” This second report purported to convey results of the “examination of clothing for bloodstain *423 patterns on Friday, September 14,2007,” even though the true date of the second examination was 15 January 2008. Defendant Thomas’s second report failed to indicate either that it was based on a second review of the evidence or that it was not the original report. Plaintiff alleged that defendants Thomas and Deaver conducted these tests not only to prove their theory that plaintiff did not act in self-defense, but “to maintain the appearance of probable cause where none existed and to obtain a first-degree murder conviction of [plaintiff] despite evidence to the contrary.”
In his report, defendant Thomas stated that Captain Hartman told him “he was present when emergency services cut the gray T-shirt from Mr. Turner’s body and that the question [sic] blood stain was observed present in its current condition on the shirt.” The report further stated that “Hartman said that he took the shirt from Emergency Medical Services and placed it in a secure area [an adjacent room], laying flat on the floor to dry.”[1]
At plaintiff’s trial for Jennifer’s murder, defendant Thomas gave testimony about plaintiff’s T-shirt that was consistent with his report. However, Captain Hartman testified that he did not arrive at the crime scene until two hours after plaintiff was taken to the hospital and that he was not present when plaintiff’s T-shirt was removed, contradicting defendant Thomas’s account. In addition, crime scene photographs showed plaintiff’s T-shirt “crumpled on the floor, inside out.” Plaintiff’s defense expert Stuart James disagreed with defendants’ bloodstain analysis, giving opinion testimony that the bloodstain was most likely a “mirror stain” created either when the shirt was folded as emergency medical service technicians cut off the shirt or when they tossed it onto the floor. On 21 August 2009, the jury found plaintiff not guilty of the first-degree murder of his wife, by reason of self-defense.
On 14 November 2011, plaintiff filed his original complaint in Superior Court, Forsyth County. On 4 April 2012, plaintiff voluntarily dismissed that complaint and immediately refiled a complaint making the same substantive allegations against the same defendants. In addition to defendants Thomas and Deaver, plaintiff named former SBI Director Robin Pendergraft and SBI supervisors John and Jane Doe as defendants in their individual and official capacities. Plaintiff’s complaint alleged four causes of action against defendants Thomas and Deaver in their individual capacities: (1) intentional infliction of emotional distress, (2) abuse of process, (3) malicious prosecution, and *424 (4) false imprisonment. The complaint also alleged negligence claims against defendants Pendergraft and John and Jane Doe. Finally, plaintiff alleged federal constitutional claims under 42 U.S.C. § 1983 against all defendants in their individual and official capacities, and claims under the North Carolina Constitution against all defendants in their official capacities.
In response, all defendants filed motions to dismiss all charges. At a hearing on the motions, plaintiff conceded that dismissal was appropriate for the section 1983 claims against all defendants in their official capacities, for the negligence claims, and for all claims against supervisors John and Jane Doe. On 11 April 2013, the trial court granted defendants’ motions to dismiss plaintiffs remaining claims pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure.[2]
Plaintiff appealed to the Court of Appeals, which affirmed the trial court’s dismissal of all claims against defendants Pendergraft and John and Jane Doe. Turner v. Thomas, 235 N.C. App. 520, 524, 762 S.E.2d 252, 257-58 (2014). In addition, that court affirmed the trial court’s dismissal of all claims against defendants Thomas and Deaver except for the claims for malicious prosecution, id. at 530, 762 S.E.2d at 261, and intentional infliction of emotional distress, id. at 537, 762 S.E.2d at 265. The Court of Appeals held that the trial court erred in dismissing these two claims, concluding plaintiff had alleged sufficient elements of both torts to survive a motion to dismiss. Id. at 540, 762 S.E.2d at 267. On 22 January 2015, we allowed petitions for discretionary review filed by defendants Thomas and Deaver (hereinafter, defendants).
In determining whether the trial court properly dismissed plaintiff’s claims against defendants for malicious prosecution and intentional infliction of emotional distress, we consider “whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted.” Newberne v. Dep’t of Crime Control & Pub. Safety, 359 N.C. 782, 784, 618 S.E.2d 201, 203 (2005) (quoting Meyer v. Walls, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997)). “This Court treats factual allegations in a complaint as true when reviewing a dismissal under Rule 12(b)(6).” Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 225, 695 S.E.2d 437, 440 (2010) *425 (citing Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006)).
To establish malicious prosecution, a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff. N.C. Farm Bureau Mut. Ins. Co. v. Cully’s Motorcross Park, Inc., 366 N.C. 505, 512, 742 S.E.2d 781, 786 (2013) (citations omitted). Defendants contend that the Court of Appeals correctly identified the elements of a malicious prosecution claim but erred in concluding that plaintiffs complaint sufficiently alleged that probable cause was lacking to pursue a first-degree murder case against him. Defendants do not challenge the sufficiency of the evidence as to the other elements of malicious prosecution. Accordingly, we begin by considering plaintiff’s allegations that defendants did not have probable cause to initiate criminal proceedings against plaintiff.
“Where the claim is one for malicious prosecution, ‘[p]robable cause . . . has been properly defined as the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution.’ ” Best v. Duke Univ., 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994) (alterations in original) (emphasis added) (quoting Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966)). We have consistently held that whether or not probable cause exists is determined at the time prosecution begins. Williams v. Boylan-Pearce, Inc., 69 N.C. App. 315, 318-19, 317 S.E.2d 17, 19 (1984), aff’d per curiam, 313 N.C. 321, 327 S.E.2d 870 (1985); see also Cook, 267 N.C. at 170, 147 S.E.2d at 914 (“In order to give a cause of action for malicious prosecution, such prosecution must have been maliciously instituted.” (citing Wingate v. Causey, 196 N.C. 71, 144 S.E. 530 (1928)); Taylor v. Hodge, 229 N.C. 558, 560, 50 S.E. 307, 309 (1948) (establishing that malicious prosecution claims hinge on whether a defendant “laid the charge” regardless of facts that should have convinced him of plaintiff’s innocence); Morgan v. Stewart, 144 N.C. 424, 430, 57 S.E. 149, 151 (1907) (“Probable cause, in cases of this kind, has been properly defined as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution.” (citation omitted)). The subsequent acquittal of a defendant does not, as a matter of law, automatically negate the existence of probable cause at the time prosecution was commenced. Bell v. Pearcy, 33 N.C. (11 Ired.) 233, 234 (1850).
The grand jury indicted plaintiff for first-degree murder on 13 December 2007. Plaintiff argues correctly that a grand jury’s action *426 in returning an indictment is only prima facie evidence of probable cause and that, as a result, the return of an indictment does not as a matter of law bar a later claim for malicious prosecution. See, e.g., Taylor v. Hodge, 229 N.C. 558, 50 S.E.2d 307 (1948) (holding that even though a magistrate initially found probable cause, the defendant in a malicious prosecution suit was not entitled to dismissal as a matter of law after the suit concluded in the plaintiff’s favor). However, cases cited to us by both parties and referenced in the opinion of the Court of Appeals involve conduct by defendants that occurred before the return of an indictment. See Williams v. Kuppenheimer Mfg. Co., 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992) (concluding that criminal prosecution of the plaintiff would have been unlikely if the defendant had not provided virtually all the evidence to investigators prior to indictment); see also Jones v. Gwynne, 312 N.C. 393, 403, 323 S.E.2d 9, 15 (1984) (noting that the malicious prosecution claim was based on the issuance of arrest warrants that the prosecutor voluntarily dismissed, not on subsequent grand jury indictments that initiated new proceedings against the defendant); Stanford v. Grocery Co., 143 N.C. 419, 425, 55 S.E. 815, 817 (1906) (explaining that the action triggering the malicious prosecution claim was “taking out the warrant and causing the plaintiff’s arrest”). Here, in contrast, plaintiff’s suit focuses on actions defendants took after the grand jury returned indictments against him. Accordingly, to determine whether probable cause existed, we must consider the evidence that was available to the investigators and presented to the grand jury in December 2007.
That evidence indicated that plaintiff inflicted two lethal slashes to his wife’s neck, resulting in her death. This evidence was supported by defendants’ original forensic report, which stated that the bloodstain on plaintiff’s T-shirt was consistent with a bloody hand being wiped on the shirt. Based on this and other evidence, the grand jury returned an indictment for first-degree murder. This independent determination by the grand jury established prima facie the existence of probable cause. See Stanford, 143 N.C. at 426, 55 S.E. at 817. Although plaintiff was subsequently acquitted on the basis of self-defense, that defense was presented at trial and does not necessarily negate the existence of probable cause at the time the case was brought to the grand jury. Plaintiff’s complaint alleges that defendants failed to investigate the incident properly and generated incorrect and inaccurate information for presentation to the grand jury. However, the critical actions complained of took place after the indictment was returned. Based on the facts known to the investigators at the time of the grand jury proceedings, we are satisfied *427 that a reasonable and prudent person would believe there was probable cause sufficient to prosecute plaintiff for first-degree murder.
The concurring opinions argue that this Court should recognize that a malicious prosecution case can arise after a magistrate or grand jury finds probable cause if that probable cause later evaporates but the prosecution nevertheless continues in bad faith (the “continuation theory”). We need not address that theory here for, assuming arguendo that this Court would adopt it under the proper circumstances, it is not before us now. Plaintiff’s complaint is not that the original probable cause dissipated. Instead, the gravamen of plaintiffs argument is that probable cause never existed and that defendants’ investigation following indictment was corrupt and shoddy. However, we have determined that the grand jury correctly found probable cause, and nothing in the subsequent investigation revealed facts that disproved that probable cause. As a result, we are not faced with facts that invoke the continuation theory.
Therefore, the trial court properly concluded that plaintiff’s malicious prosecution claim against defendants should be dismissed under Rule 12(b)(6) because plaintiff failed to state a claim upon which relief may be granted. We reverse the holding of the Court of Appeals to the contrary.
We next address plaintiff’s claim of intentional infliction of emotional distress. Elements of this tort are “(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another.” Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The tort also may be established when a “defendant’s actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress.” Id. at 452, 276 S.E.2d at 335. Conduct constituting this cause of action may be found in “an abuse by the actor of a position... which gives him... power to affect” the interests of another. Restatement (Second) of Torts § 46 cmt. e (Am. Law Inst. 1965). We have held that extreme and outrageous conduct is that which “exceeds all bounds of decency tolerated by society.” West v. King’s Dep’t Store, Inc., 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988) (citing Stanback v. Stanback, 297 N.C. 181, 254 S.E.2d 611 (1979), abrogated in part by Dickens, 302 N.C. 437, 276 S.E.2d 325), and is “regarded as atrocious, and utterly intolerable in a civilized community,” Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985). Our state has set a “high threshold” to satisfy this element. Dobson v. Harris, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), rev’d on other grounds, 352 N.C. 77, 530 S.E.2d 829 (2000). Foreseeability of injury, while not an *428 element of the tort, is a factor to consider in assessing the outrageousness of a defendant’s conduct. West, 321 N.C. at 705, 365 S.E.2d at 625 (citing Dickens, 302 N.C. 437, 276 S.E.2d 325).
We begin by considering the first element of the tort, whether defendants’ conduct as alleged was extreme and outrageous. According to plaintiff, defendants concocted a motive for plaintiff to murder his wife and a theory to explain how that murder was carried out. Defendants then made a calculated decision to conduct and repeat experiments until they achieved a bloodstain pattern that supported their theory. When they achieved results they deemed satisfactory, defendant Thomas then rewrote the conclusion of his earlier blood spatter and bloodstain report without stating that he was presenting a new or amended version of the original report. To the contrary, defendant Thomas’s report indicated the conclusion reached resulted from the original analysis of the evidence conducted on 14 September 2007.
Plaintiff’s allegations do not portray agents vigorously pursuing an investigation with a determination to find the truth, a practice law-abiding citizens not only endorse but expect. Instead, plaintiff’s allegations paint a picture of law enforcement officials deliberately abusing their authority as public officials to manipulate evidence and distort a case for the purpose of reaching a foreordained conclusion of guilt. We do not doubt that plaintiff’s complaint alleged extreme and outrageous conduct by these defendants sufficient to withstand a Rule 12(b)(6) motion to dismiss.
As to the second element of the tort, plaintiff alleged that defendants acted with intent to inflict emotional distress. While standing trial for first-degree murder is unquestionably stressful for anyone, plaintiff’s complaint does not allege that defendants were merely negligent or that their investigation was inadequate. Instead, the complaint alleges sinister motives and conduct by defendants specifically aimed toward the improper purpose of wrongfully convicting plaintiff of murder. See Needham v. Price, _ N.C. _, 780 S.E.2d 549, 551 (2015) (holding that the “defendant’s conduct did not rise to the level of willful and malicious conduct” in the context of parent-child immunity because the evidence did not show the defendant’s “conduct was directed towards the [injured children]”). Specifically, the complaint, which we read in the light most favorable to plaintiff, alleges that defendants “wantonly and maliciously conducted unscientific tests to ‘shore up’ ” their theory of the case, “wantonly failed to label [their] work properly,” altered and manipulated evidence, and acted “to maintain the appearance of probable cause where none existed and to obtain a first-degree murder conviction of *429 [plaintiff] despite evidence to the contrary.” These allegations do not describe an investigation that was incompetent or incomplete, or one that skeptically explored the validity of plaintiff’s self-defense claim. Instead, the complaint contends that defendants knew the results they wanted before they began and disregarded all evidence to the contrary. That plaintiff would suffer mental anguish as a result of defendants’ conduct is readily foreseeable. Moreover, plaintiff’s allegations indicated that defendants were recklessly indifferent to the consequences of their actions. Accordingly, plaintiff’s allegation of the intent element of his claim is sufficient to survive a Rule 12(b)(6) motion to dismiss.
Finally, we consider whether plaintiff has sufficiently alleged that he suffered severe emotional distress. The complaint states, among other things, that severe emotional distress manifested itself “in diagnosable form... including, inter alia: a. Depression; b. Anxiety; c. Loss of sleep; d. Loss of appetite; e. Lack of concentration; f. Difficulty remembering things; g. Feeling alienated from loved ones; h. Shame; and i. Loss of respect with the community and co-workers.” Plaintiff further alleged that defendants’ conduct caused him damages “in excess of $10,000.00.” We find that these are sufficient allegations of severe emotional distress.
Taking all of plaintiff’s allegations in the light most favorable to him, as we must at the pleading stage, we hold plaintiff has alleged elements of intentional infliction of emotional distress sufficient to withstand a motion to dismiss made pursuant to Rule 12(b)(6). As this case moves forward to summary judgment or trial, plaintiff will have to prove that his allegations are true, including that defendants’ conduct amounted to more than substandard police work and was, instead, directed at plaintiff for an improper purpose. Accordingly, we affirm the decision of the Court of Appeals holding the trial court erred in dismissing this claim. This case is remanded to the Court of Appeals for further remand to the trial court for additional proceedings consistent with this opinion.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.

. The complaint does not specify whether defendant Thomas included this information in his initial report or added it following his second examination of the evidence.

. It appears from the record that the citation to Rule 12(b)(1), lack of subject mat- • ter jurisdiction, refers to constitutional claims brought against defendants. None of those constitutional claims are before us now and the parties have made no arguments relating to jurisdiction. Accordingly, we will address the trial court’s Rule 12(b)(6) rulings only.