NO. COA13-1131

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

KIRK ALAN TURNER,
        Plaintiff,

    v.                                    Forsyth County
                                          No. 12 CVS 2352
SPECIAL AGENT GERALD R. THOMAS, in
his individual capacity and,
in the alternative, in his
official capacity; SPECIAL AGENT
DUANE DEAVER, in his individual
capacity and, in the alternative,
in his official capacity; ROBIN
PENDERGRAFT, in her individual
capacity and, in the alternative,
in her official capacity; and
JOHN and JANE DOE SBI Supervisors,
in their individual capacities
and, in the alternative in their
official capacities,
          Defendants.


     Appeal by plaintiff from order entered 11 April 2013 by

Judge Stuart Albright in Forsyth County Superior Court.   Heard

in the Court of Appeals 5 March 2014.


        *Morrow, Porter, Vermitsky & Fowler, PLLC, by John C.
        Vermitsky, for plaintiff-appellant.*

        *Attorney General Roy Cooper, by Special Deputy Attorney
        General Angel E. Gray, Special Deputy Attorney General
        Grady Balentine, Jr., and Assistant Attorney General
        Matthew Boyatt, for defendants-appellees.*


        GEER, Judge.

Plaintiff Kirk Allan Turner appeals from an order granting the motions of defendants Gerald R. Thomas, Duane Deaver, Robin Pendergraft and John and Jane Doe to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure. We agree with plaintiff that the trial court erred in dismissing his state law claims against defendants Thomas and Deaver for malicious prosecution and intentional infliction of emotional distress ("IIED") because the allegations of the complaint, when treated as true, are sufficient to state a claim for relief, and the complaint does not contain allegations establishing that those claims are barred by the statute of limitations. As to plaintiff's remaining claims, we affirm.

## Facts

Plaintiff was tried for the murder of his wife, Jennifer Wittwer Turner, and found not guilty by reason of self defense. Following his acquittal, plaintiff commenced this lawsuit against various officers of the North Carolina State Bureau of Investigation ("SBI") who were involved in the investigation of his wife's death. Plaintiff's complaint alleges the following facts.

On 12 September 2007, plaintiff and his friend Gregory Adam Smithson went to the Turner's marital residence, where Mrs. Turner was living, to retrieve some of Mr. Smithson's personal property being stored there. While Mr. Smithson was loading his belongings, plaintiff and Mrs. Turner began talking about personal matters. During the conversation, Mrs. Turner picked up a spear and began attacking plaintiff, stabbing him multiple times in his thigh and groin area. In response, defendant grabbed a pocketknife from his right front pocket and cut Mrs. Turner twice in the neck, causing her death.

Mr. Smithson called 911 and performed CPR on Mrs. Turner until emergency personnel arrived. The Davie County Sheriff's Office responded to the 911 emergency call and Special Agent E.R. Wall responded on behalf of SBI. Agent Wall notified the SBI Assistant Special Agent in Charge, K.A. Cline, that a blood splatter expert would be needed to analyze the scene. However, after further examination of Mrs. Turner's body, Agent Wall concluded that the blood splatter patterns at the scene were likely the result of arterial spurting from the large wound in Mrs. Turner's neck.

Later that evening, Agent Cline arranged for defendant Thomas, a special agent at the SBI, to conduct a blood splatter interpretation of the scene and of several articles of clothing

that had been collected during the course of the investigation. On 14 September 2007, defendant Thomas documented the bloodstains and bloodstain patterns at the crime scene and then went to the Davie County Sheriff's Office to examine clothing and other evidence collected from the scene. Prior to defendant Thomas' examining any evidence, SBI Special Agent D.J. Smith informed him that Mrs. Turner had apparently stabbed plaintiff with a spear and, in response, plaintiff reached into his right front pocket of his pants to retrieve a knife that he used to cut her throat.

Fifteen days later, defendant Thomas wrote a report documenting the bloodstain patterns at the scene and his notes regarding the clothing seized. The report stated that the t-shirt worn by plaintiff on the night of Mrs. Turner's death had a large bloodstain on it consistent with a transfer bloodstain pattern resulting from a bloody hand being wiped on the surface of the shirt.

On 13 December 2007, plaintiff was indicted for first degree murder of Mrs. Turner. Plaintiff was detained for one month before being granted a $1,000,000.00 bond. When plaintiff posted bail, he was released on house arrest.

On 15 January 2008, defendant Thomas met with defendant Deaver, an SBI special agent; an attorney with the District

Attorney's office; Captain Jerry Hartman, the lead investigator for the Davie County Sherriff's Office; and "Mr. Marks" to discuss the feasibility of plaintiff's version of events leading to Mrs. Turner's death. At that meeting, the men theorized that plaintiff killed Mrs. Turner as part of an elaborate scheme in which plaintiff stabbed himself with the spear and staged the scene to make it look like self defense. To prove this theory, defendants needed to show that the transfer blood stain on plaintiff's shirt was not a mirror image stain from plaintiff's hand, but rather a transfer pattern consistent with plaintiff wiping his knife off on his shirt.

Defendants Thomas and Deaver, with the approval of their supervisor (defendant Pendergraft), then "wantonly and maliciously conducted unscientific tests to 'shore up' the new theory." In conducting the new tests, defendant Thomas retook samples of evidence but failed to properly label his work, and he failed to make a record of his new theory. Defendants Thomas and Deaver videotaped themselves conducting unscientific experiments to try to obtain a blood smear from a knife similar to the smear on plaintiff's shirt. After several attempts, defendants obtained a smear with a knife that looked similar to the smear on plaintiff's shirt. At that point in the video, defendant Deaver can be heard saying, "'Oh, even better! Holy

cow, that was a good one!' and 'Beautiful! That's a wrap, baby!'"

After conducting the new tests and reviewing the evidence a second time, defendant Thomas created a second report purportedly discussing the "examination of clothing for bloodstain patterns on Friday, September 14, 2007," even though the actual date of the examination was 15 January 2008. The second report altered the first report by replacing "'consistent with a bloody hand wiped on the shirt' with 'consistent with a pointed object being wiped on the shirt.'"

Stuart James of Fort Lauderdale, Florida, disagreed with Thomas and Deaver's blood stain analysis and believed that the blood stain was most likely a "'mirror stain'" created when the shirt was folded after the shirt was cut off or when it was tossed on the floor.[1] Thomas, however, wrote in his report that Captain Hartman "'was present when emergency services cut the gray T-shirt from Mr. Turner's body and that the question [sic] blood stain was observed present in its current condition on the shirt. Hartman said that he took the shirt from Emergency

---

[1]It is unclear from the complaint when and in what form Stuart James offered this opinion, whether he testified at plaintiff's criminal trial, what his credentials were, or how he came to be involved in the case.

Medical Services and placed it in a secure area [an adjacent room], laying flat on the floor to dry.'"[2]

Plaintiff's trial began on 27 July 2009. Defendant Thomas testified at trial consistent with what he had written in his report. Captain Hartman testified, however, that he did not arrive at the crime scene until two hours after EMTs took plaintiff to the hospital and that he was not present when EMTs removed the shirt. Additionally, initial crime scene photos showed that the t-shirt was crumpled on the floor, inside out.

The jury returned a verdict of not guilty of murder by reason of self defense on 21 August 2009. On 14 November 2011, plaintiff filed a complaint against defendants Thomas, Deaver, Pendergraft, and John and Jane Doe in a case docketed as 11 CVS 7812. Defendant Pendergraft is the Director of the SBI, and defendants John and Jane Doe are supervisors for the SBI. On 4 April 2012, plaintiff voluntarily dismissed his complaint in 11 CVS 7812, and filed the complaint which is the subject of this appeal.

Plaintiff's complaint alleges several causes of action against defendants. As to defendants Thomas and Deaver in their

---

[2]The complaint does not specify when Thomas added this information to the report, but it could be read to imply that Thomas wrote this in his second report in response to Stuart James' opinion in an effort to discredit it, but the complaint is vague in this regard.

individual capacities, the complaint alleges claims for (1) IIED, (2) Abuse of Process, (3) Malicious Prosecution, and (4) False Imprisonment. As for defendants Pendergraft and Jane and John Doe, plaintiff brought a claim of negligence for their failure to properly train, supervise, and direct defendants Thomas and Deaver. Finally, the complaint asserts claims under 42 U.S.C. § 1983 against all defendants in both their individual and official capacities, and a claim against all defendants in their official capacities for violation of Article I § 19 of the North Carolina Constitution.

Defendants filed motions to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7). After a hearing on 8 April 2013, the trial court entered an order granting defendants' motions. In the order, the trial court found that plaintiff conceded to the dismissal of all claims against John and Jane Doe and to the dismissal of the 42 U.S.C. § 1983 claim against all defendants in their official capacities. The order concluded that "Plaintiff's complaint should be dismissed as to all Defendants for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted." In light of this conclusion, the trial court found it "unnecessary to consider the Defendant's Motion to Dismiss for failure to

join necessary parties pursuant to 12(b)(7)." Plaintiff timely appealed the order to this Court.

## Discussion

On appeal, plaintiff argues that the trial court should not have dismissed the claims of malicious prosecution, abuse of process, IIED, and false imprisonment against defendants Thomas and Deaver, or the 42 U.S.C. § 1983 claims against defendants Thomas, Deaver, and Pendergraft in their individual capacities.

Plaintiff does not challenge the dismissal of the remaining claims including all the claims against defendants John and Jane Doe, and the negligence claim against Pendergraft. Accordingly, we affirm the dismissal of those claims. *See* N.C.R. App. P. 28(a).

## Standard of Review

"The motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (internal citation omitted), *disapproved of on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). Generally, "'a complaint should not be dismissed

for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim*." *Id.* (quoting 2A *Moore's Federal Practice*, § 12.08 (2d ed. 1975)). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

I.   Plaintiff's State Law Claims

Plaintiff sued defendants Thomas and Deaver for malicious prosecution, abuse of process, IIED, and false imprisonment. Defendants moved to dismiss these claims on the basis of the statute of limitations, failure to state a claim, and public official immunity.[3]

With respect to the statute of limitations, the parties agree that the statute of limitations for each of the state law claims is three years, N.C. Gen. Stat. § 1-52 (2013), and that

_____

[3]In his complaint, plaintiff sought to impose liability on defendant Pendergraft for defendants Thomas and Deaver's actions based on a claim of negligent supervision and training. Plaintiff does not, however, on appeal challenge the trial court's dismissal of that negligence claim. Plaintiff has, therefore, chosen not to proceed with any state law claim against defendant Pendergraft.

plaintiff initiated this action on 14 November 2011. Therefore, any cause of action that accrued prior to 14 November 2008 is barred by the statute of limitations.

A.   Malicious Prosecution

"In order to recover in an action for malicious prosecution, plaintiff must establish that defendant: (1) instituted, procured or participated in the criminal proceeding against plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of plaintiff." *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 200, 412 S.E.2d 897, 899 (1992). In this case, defendant does not dispute that the prior proceeding terminated in favor of plaintiff in August 2009 when plaintiff was acquitted of first degree murder.

Because the prior proceeding terminated within three years of the initiation of this lawsuit, plaintiff's malicious prosecution claim is not barred by the statute of limitations. Defendants argue, however, that the trial court correctly dismissed this claim because plaintiff's complaint does not sufficiently allege facts to support the first three elements of malicious prosecution.

1.   Institution, Procurement, or Participation in the Criminal Proceeding

Defendants Thomas and Deaver argue that plaintiff's complaint fails to adequately allege the element of initiation, procurement, or participation in the criminal proceeding because "there are no allegations that any of the named defendants personally played any role in presenting the case to the grand jury or in initiating criminal process against the plaintiff. In addition, defendants did not engage in the actions of which plaintiff specifically complains . . . until several months after plaintiff's arrest and release on bond."

However, regarding this first element of a malicious prosecution cause of action, this Court has recognized:

> [W]hen discussing the tort of malicious prosecution generally, our cases indicate a liberal reading of the requirement that the defendant have "initiated" the earlier proceeding. For example, while some of our decisions involving a claim based upon a prior criminal action have stated a plaintiff must prove the defendant *initiated* the prior criminal proceeding, *see, e.g., Alt v. Parker*, 112 N.C. App. 307, 312, 435 S.E.2d 773, 776 (1993), *disc. review denied*, 335 N.C. 766, 442 S.E.2d 507 (1994), and others have said a plaintiff must show defendant *instituted* the prior proceeding, *see, e.g., Juarez-Martinez v. Deans*, 108 N.C. App. 486, 491, 424 S.E.2d 154, 157, *disc. review denied*, 333 N.C. 539, 429 S.E.2d 558 (1993), still others have held a plaintiff must establish that the defendant "instituted, procured *or participated in* the criminal proceeding against plaintiff." *Williams*, 105 N.C. App. at 200, 412 S.E.2d at 899 (citation omitted) (emphasis added).

*Moore v. City of Creedmoor*, 120 N.C. App. 27, 38, 460 S.E.2d 899, 906 (1995), *aff'd in part, rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997).

Thus, *Moore* recognized that a showing that a defendant "'participated in the criminal proceeding'" is sufficient to establish the first element of a malicious prosecution claim for relief. *Id.* (emphasis omitted) (quoting *Williams*, 105 N.C. App. at 200, 412 S.E.2d at 899). Although defendants refer to the inadequacy of plaintiff's allegations regarding "defendants' participation *in the procurement of the indictment*" (emphasis added), *Moore*'s holding allowing for a showing of participation in a criminal proceeding generally necessarily contemplates participation after the proceeding has been initiated or instituted. Defendants' interpretation improperly merges participation into procurement and eliminates one of the three alternative ways that this Court has stated that this element may be established.

Allowing this element to be established by a showing of participation in the criminal proceeding is consistent with the *Restatement (Second) of Torts*, which indicates that "[a] private person who takes an active part in *continuing or procuring the continuation* of criminal proceedings initiated by himself *or by another* is subject to the same liability for malicious

prosecution as if he had then initiated the proceedings." *Restatement (Second) Torts* § 655 (1977) (emphasis added). This rule "applies . . . when the proceedings are initiated by a third person, and the defendant, knowing that there is no probable cause for them, thereafter takes an active part in procuring their continuation." *Id.*, cmt. b.

Although we have not found any North Carolina cases specifically addressing what facts are necessary to show that a defendant sufficiently participated in a criminal proceeding to support a claim for malicious prosecution, we believe that *Williams* is instructive. In *Williams*, this Court explained that "[t]he act of giving honest assistance and information to prosecuting authorities does not render one liable for malicious prosecution." 105 N.C. App. at 201, 412 S.E.2d at 900.

There, this Court held that the plaintiff presented sufficient evidence of the first element of malicious prosecution when

> the jury could find defendant's actions went further than merely providing assistance and information. Defendant brought all the documents used in the prosecution to the police. As discussed earlier, these documents included the eleven suspicious void sales, the three suspicious alteration tickets, and the names and addresses of witnesses to be contacted. From the record it appears the only additional investigation undertaken by the authorities was to contact the three individuals who had suspicious

> alterations performed. Law enforcement officials never interviewed other customers, store employees or plaintiff prior to the time of his arrest. Except for the efforts of defendant, it is unlikely there would have been a criminal prosecution of plaintiff.

*Id.* It follows from this reasoning that once criminal proceedings have been initiated, the first element of malicious prosecution can be established by a showing that defendant participated in the criminal proceedings if "[e]xcept for the efforts of defendant, it is unlikely" that the criminal prosecution would have *continued* against defendant. *Id.*

In this case, the complaint alleges that defendants Thomas and Deaver met with a member of the District Attorney's office in January 2008 to help formulate a theory in support of the first degree murder charge. Defendants theorized that Mrs. Turner did not attack plaintiff, but rather that plaintiff stabbed himself with the spear and staged the scene to look like self defense as part of an elaborate scheme.

The complaint further alleges that defendants then devised and executed unscientific tests designed specifically to support the theory, and defendant Thomas altered his initial report to reflect their new findings arising out of those tests. Significantly, the complaint alleges that "[t]his evidence was crucial to maintain probable cause for a first-degree murder

charge." Thus, plaintiff has sufficiently alleged that defendants participated in the criminal proceedings by alleging facts that tend to show that "[e]xcept for the efforts of defendant[s], it is unlikely" that the proceedings would have continued against plaintiff. *Id.*

Accordingly, we hold that plaintiff's complaint sufficiently alleges the first element of malicious prosecution. *See also Pierce v. Gilchrist*, 359 F.3d 1279, 1291 (10th Cir. 2004) (applying common law elements of malicious prosecution to § 1983 claim and holding allegations sufficient to survive motion to dismiss when complaint alleged that, after plaintiff's arrest, defendant forensic analyst "'contrived evidence to secure a fraudulent conviction'" by creating forensic report that was false, without any scientific basis, and in disregard of exculpatory evidence).

### 2. Probable Cause

Defendants further argue that dismissal was proper because plaintiff's allegation that there was no probable cause to initiate or pursue criminal charges against plaintiff is impermissibly conclusory and need not be taken as true in considering the motion to dismiss. However, this Court has recognized that "[w]ith the adoption of 'notice pleading,' mere vagueness or lack of detail is no longer ground for allowing a

motion to dismiss." *Gatlin v. Bray*, 81 N.C. App. 639, 644, 344 S.E.2d 814, 817 (1986) (quoting *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970)). Rather, "'[p]leadings comply with our present concept of notice pleading if the allegations in the complaint give defendant sufficient notice of the nature and basis of plaintiffs' claim to file an answer, and the face of the complaint shows no insurmountable bar to recovery.'" *Id.* (quoting *Rose v. Guilford Cnty.*, 60 N.C. App. 170, 173, 298 S.E.2d 200, 202 (1982)).

Under the North Carolina standard for motions to dismiss, plaintiff's allegation that there was no probable cause is sufficient unless the facts alleged in the complaint conclusively establish that there was probable cause or that there does not exist "'any state of facts which could be proved in support of'" the allegation of lack of probable cause. *Stanback*, 297 N.C. at 185, 254 S.E.2d at 615 (emphasis omitted) (quoting 2A *Moore's Federal Practice*, § 12.08). "'The test for determining probable cause is whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation.'" *Strickland v. Hedrick*, 194 N.C. App. 1, 17, 669 S.E.2d 61, 71 (2008) (quoting *Becker v. Pierce*, 168 N.C. App. 671, 677, 608 S.E.2d 825, 829-30 (2005)).

Defendants argue that the complaint's allegations that (1) plaintiff "grabbed a pocketknife from his right front pocket and made two cuts in rapid succession to Jennifer Turner's neck area which resulted in her death[,]" and (2) plaintiff was arrested pursuant to a grand jury indictment conclusively establish the existence of probable cause in this case. We disagree.

First degree murder is the intentional and unlawful killing of a human being with premeditation and deliberation. N.C. Gen. Stat. § 14-17 (2013). The allegation that plaintiff killed Mrs. Turner with a pocket knife, standing alone, is insufficient to establish probable cause that plaintiff acted with malice, premeditation, and deliberation as a matter of law. In determining probable cause, the totality of the circumstances must be considered. Here, the complaint, when viewed in the light most favorable to plaintiff, shows that plaintiff accompanied his friend to Mrs. Turner's residence in order to help his friend retrieve personal property being stored there. While plaintiff talked to Mrs. Turner, she picked up a large spear and attacked plaintiff, stabbing him several times. In response, plaintiff retrieved a pocketknife from his front pocket and cut Mrs. Turner twice in the neck.

These allegations are consistent with plaintiff's claim that he only acted in self defense and did not stab Mrs. Turner

with malice, premeditation, and deliberation. When viewed in the light most favorable to plaintiff, the facts alleged in the complaint do not establish as a matter of law that there was probable cause to arrest plaintiff for first degree murder.

In support of their argument that the indictment conclusively establishes probable cause, defendants cite *Stanford v. Grocery Co.*, 143 N.C. 419, 426, 55 S.E. 815, 817 (1906), which holds that that a true bill of indictment against a criminal defendant returned by a grand jury is prima facie evidence of probable cause. However, "[w]hile our Supreme Court has said that both a grand jury indictment and a waiver of a preliminary hearing in a criminal action establish a *prima facie* showing of probable cause, nevertheless, such a finding or waiver is not conclusive in a subsequent malicious prosecution action, and the question of probable cause is still an issue for the jury." *Williams*, 105 N.C. App. at 201, 412 S.E.2d at 900. The indictment, therefore, only creates an issue of fact for the jury to determine with respect to the issue of probable cause. Accordingly, we conclude that plaintiff's complaint sufficiently alleges a lack of probable cause.

### 3. Malice

Defendants similarly argue that plaintiff's allegation that defendants acted maliciously is impermissibly conclusory and not

supported by the facts alleged. However, in a malicious prosecution claim, "malice may be inferred from want of probable cause." *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). Additionally, "'[e]vidence that the chief aim of the prosecution was to accomplish some collateral purpose, or to forward some private interest . . . is admissible both to show the absence of probable cause and to create an inference of malice, and such evidence is sufficient to establish a prima facie want of probable cause.'" *Id.* (quoting *Dickerson v. Atl. Ref. Co.*, 201 N.C. 90, 95, 159 S.E. 446, 449 (1931)).

Plaintiff alleged that defendants acted with malice, without probable cause, and for the ulterior purposes of political gain and advancing their careers. These allegations are sufficient under *Cook* to establish the element of malice. Although defendants suggest that acting for political gain does not constitute a "collateral purpose" that may raise an inference of malice and a lack of probable cause, they have cited no authority to support such a limitation. As explained by our Supreme Court in *Dickerson*, "[t]he reason for holding that proof of a collateral purpose is sufficient to make out a prima facie want of probable cause is based upon the hypothesis that a person, bent on accomplishing some ulterior motive, will act upon much less convincing evidence than one whose only

desire is to promote the public good." 201 N.C. at 95, 159 S.E. at 450. We see no reason why this rationale does not apply when the ulterior motive is to obtain political gain.

In sum, we conclude that the complaint sufficiently alleges the essential elements of malicious prosecution. Therefore, the trial court erred in dismissing the claim of malicious prosecution as to defendants Thomas and Deaver.

B.  Abuse of Process

"'[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended (sic) to be secured.'" *Stanback*, 297 N.C. at 200, 254 S.E.2d at 624 (quoting *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965)).

More recently, this Court has explained:

> "[A]buse of process requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding, and that [b]oth requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect. The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was

> initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used. The act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter."

*Chidnese v. Chidnese*, 210 N.C. App. 299, 310-11, 708 S.E.2d 725, 734-35 (2011) (quoting *Stanback*, 297 N.C. at 201, 254 S.E.2d at 624). "There is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Mfrs. & Jobbers Fin. Corp. v. Lane*, 221 N.C. 189, 196-97, 19 S.E.2d 849, 853 (1942).

Here, plaintiff alleged that defendants Thomas and Deaver "intentionally and maliciously used their positions as Special Agents with the SBI, tasked with the official duty of investigating the death of Jennifer Wittwer Turner, to obstruct justice and 'frame' Dr. Kirk Turner for the first-degree murder of his wife Jennifer Turner after Dr. Kirk Turner was indicted. This was done for the improper purpose of political benefit, and to ensure a conviction in a high profile case where it would be unpopular for the district attorney to enter a dismissal of charges." The complaint additionally alleged that defendants' "actions were undertaken for an ulterior motive, that is to secure a conviction of a high publicity murder case regardless

of guilt to further the careers of the Defendants and to assist the District Attorney in winning a very public case for political purposes with no regard to the defendant's guilt or innocence."

These allegations are insufficient to support an abuse of process claim because the improper purpose alleged -- securing plaintiff's conviction -- is within the intended scope of criminal proceedings. It, therefore, fails to meet the requirement that a defendant use the process to achieve a result "not warranted or commanded by the writ" and "not lawfully or properly obtainable" by the process. *Fowle*, 263 N.C. at 728, 140 S.E.2d at 401. Accordingly, we affirm the trial court's dismissal of plaintiff's abuse of process claim under Rule 12(b)(6). *See also Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) (holding that when "officers instituted the criminal charge for precisely the purpose for which it was intended [--] establishing that [plaintiff] was guilty of a criminal offense" -- "fact that the officers expected to realize some benefit by covering up their own alleged wrongdoing simply points to an ulterior motive, not the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process").[4]

_____

[4]Because of this holding, we need not address whether the

C.   Intentional Infliction of Emotional Distress

The essential elements of a claim for IIED are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens*, 302 N.C. at 452, 276 S.E.2d at 335.  "The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id.*

1.   Statute of Limitations

This Court has stated that a cause of action for IIED "does not come into existence until the continued conduct of the defendant causes extreme emotional distress." *Bryant v. Thalhimer Bros., Inc.*, 113 N.C. App. 1, 12, 437 S.E.2d 519, 525 (1993).  In *Bryant*, the plaintiff sued her former employer for IIED based upon allegations of sexual harassment that began more than three years prior to her initiation of the lawsuit.  *Id.* at 3, 437 S.E.2d at 521.  The defendant raised the defense of the three-year statute of limitations and argued that the statute barred recovery for events occurring more than three years prior to the filing of the lawsuit.  *Id.* at 4, 437 S.E.2d at 521.  The trial court denied the defendant's motion for summary judgment and motion in limine to bar evidence of events occurring outside of the period of the statute of limitations.  *Id.*  A jury

_____

claim is barred by the statute of limitations.

returned a verdict in favor of the plaintiff on the IIED claim, and the defendant appealed. *Id.*

On appeal, this Court rejected the defendant's contention that "the acts of [the defendant] that occurred prior to December 1986 are barred by the three-year statute" because "[i]f all of the elements of the tort [are] not present, then no cause of action for intentional infliction of emotional distress exist[s] at that time." *Id.* at 13, 437 S.E.2d at 526. The Court explained:

> The statutes of limitations serve to bar *claims*, not *evidence* of contributing factors to an ultimate claim that has not yet come into existence. "As our courts have frequently noted, in no event can a statute of limitations begin to run until the plaintiff is entitled to institute action. . . . Ordinarily, the period of the statute of limitations begins to run when *the plaintiff's right* to maintain an action *for the wrong alleged* accrues. The cause of action accrues *when the wrong is complete. . . .*" Obviously, outrageous conduct by the defendant alone would confer no cause of action on the plaintiff in the case until she suffered extreme emotional distress caused by his actions.

*Id.* (quoting *Bolick v. Am. Barmag Corp.*, 54 N.C. App. 589, 594, 284 S.E.2d 188, 191, *decision modified on other grounds*, 306 N.C. 364, 293 S.E.2d 415 (1981)). This Court held that because the plaintiff's cause of action did not accrue until "the actions of the defendant did in fact cause emotional distress of

the calibre set out in *Waddle* [*v. Sparks*, 331 N.C. 73, 414 S.E.2d 22 (1992),]" the trial court did not err in denying the defendant's motion in limine. *Id.*

In *Waddle*, the Supreme Court adopted the same standard for the element of "severe emotional distress" in an IIED claim as required for a claim of negligent infliction of emotional distress:

> "the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."

331 N.C. at 83, 414 S.E.2d at 27 (quoting *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

Here, plaintiff's complaint alleges that plaintiff "did in fact suffer severe emotional distress as a direct and proximate result of the actions of the defendants which first manifested themselves in diagnosable form following his acquittal for first degree murder . . . ." Defendant was acquitted in August 2009, within the three-year statute of limitations before plaintiff filed the complaint in November 2011. Because plaintiff's cause of action could not accrue until he suffered severe emotional distress, and the complaint alleges that did not happen until

after August 2009, this cause of action as to both defendants Thomas and Deaver is not barred by the statute of limitations. *See also Ruff v. Reeves Bros., Inc.*, 122 N.C. App. 221, 227, 468 S.E.2d 592, 597 (1996) (applying *Bryant* and holding that "plaintiff's cause of action did not accrue until the actions of the defendant did, in fact, cause severe emotional distress").

2.   Failure to State a Claim for Relief

Defendants argue that plaintiff's complaint fails to allege sufficient facts to show that defendants engaged in extreme and outrageous conduct, the first element of IIED.  "[T]he initial determination of whether conduct is extreme and outrageous is a question of law for the court: '*If the court determines that it may reasonably be so regarded*, then it is for the jury to decide whether, under the facts of a particular case, defendants' conduct . . . was in fact extreme and outrageous.'"  *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 381-82 (1987) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311 (1985)).

"'Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365,

373, 618 S.E.2d 867, 872 (2005) (quoting *Guthrie v. Conroy*, 152 N.C. App. 15, 22, 567 S.E.2d 403, 408-09 (2002)). "[T]his Court has set a high threshold for a finding that conduct meets the standard." *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000). "'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Briggs*, 73 N.C. App. at 677, 327 S.E.2d at 311 (quoting *Restatement (Second) of Torts* § 46 cmt. d.).

We believe that the allegations in the complaint in this case are similar to the facts of *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621 (1988). In *West*, a store manager falsely accused the plaintiffs of stealing from his store, despite the plaintiffs producing a receipt of their purchase and verification from the cashier of the sale. *Id.* at 700-01, 365 S.E.2d at 622-23. In concluding that the evidence of the store manager's conduct was sufficient to go to the jury on the claim of IIED, the Supreme Court cited favorably Judge Phillips' dissent from the majority opinion of this Court that

> "[f]ew things are more outrageous and more calculated to inflict emotional distress on innocent store customers that have paid their good money for merchandise and have in hand a document to prove their purchase than for the seller or his agent, disdaining to even examine their receipt, to repeatedly tell them in a loud voice in the presence of

> others that they stole the merchandise and would be arrested if they did not return it."

*Id.* at 705, 365 S.E.2d at 625 (quoting *West v. King's*, 86 N.C. App. 485, 358 S.E.2d 386 (1987) (Phillips, J., dissenting) (unpublished)).

Similarly, here, when viewed in the light most favorable to plaintiff, the complaint alleges facts showing that plaintiff's prosecution was highly publicized and he was accused of a crime he did not commit. While in *West*, the defendant refused to even look at evidence that would have established that the plaintiffs had not stolen anything, here, the allegations of the complaint, viewed in the light most favorable to plaintiff, allege that defendants Thomas and Deaver -- public officers -- essentially manufactured evidence to negate plaintiff's self defense claim by (1) performing unscientific tests designed to prove a theory that plaintiff's stab wounds were self-inflicted and the scene staged to look like self defense; (2) creating a second report supporting that theory that was inconsistent with his first report; (3) writing the second report in a manner that hid the existence of the first report by falsely suggested the second report was the result of examination of the evidence of four months earlier (when the first report was done) and by not indicating that the second report was an amendment or supplement

to the first report; and (4) bolstering the theory by making false statements in the second report and in testimony regarding what the Sheriff's Office lead investigator had said. We believe that allegations that defendants falsely created evidence to establish guilt equates with the *West* defendant's refusal to look at evidence that would have exonerated the plaintiffs.

The Court in *West* also noted that the foreseeability of injury is a factor that goes to the outrageousness of a defendant's conduct. *Id.* It stands to reason that the more serious the crime of which someone is falsely accused and the more credible the accusers, the more foreseeable the mental anguish resulting therefrom. Here, the crime of which plaintiff was accused, first degree murder, is a much more serious offense than the crime of which the plaintiff in *West* was accused and the accusers -- experienced special agents of the SBI -- more credible to the public than the store manager in *West.* Therefore, the nature of the crime and the identity of the defendants in this case are factors that may be considered in assessing the outrageousness of defendants' conduct.

Defendants, however, argue that plaintiff's allegations do not differ substantially from the conduct in *Dobson*. In *Dobson*, a department store employee reported a customer to the

Department of Social Services ("DSS") for child abuse after the customer "yelled at the [15-month-old] child, picked her off the counter where she had been sitting, and set her back down hard." 134 N.C. App. at 575, 521 S.E.2d at 713. The investigation against the customer was terminated when DSS was unable to substantiate the employee's claims, and the customer sued the employee for IIED. *Id.* In holding that summary judgment was properly granted in favor of the defendant employee, this Court explained:

> Assuming *arguendo* that defendant [employee] exaggerated or fabricated the events she reported to DSS, the report served only to initiate an investigatory process. Although falsely reporting child abuse wastes the limited resources available to DSS and subjects the reported parent to questioning and investigation, in light of this Court's precedent, we cannot say that such actions constitute "extreme and outrageous conduct" which is "utterly intolerable in a civilized community."

*Id.* at 578-79, 521 S.E.2d at 715 (quoting *Briggs*, 73 N.C. App. at 677, 327 S.E.2d at 311).

In *Dobson*, the defendant was a private citizen whose false accusations of criminal conduct merely served to initiate an investigatory process. The defendant's conduct in *Dobson* was not considered outrageous in part due to the existence of an independent investigatory process that served to protect the plaintiff from further proceedings based on false accusations.

In contrast, here, defendants are agents of the SBI who have an official duty to investigate allegations of criminal conduct and discover the truth. They are the individuals who are supposed to be conducting the independent investigatory process that would protect plaintiff from false accusations. When those individuals generate unsupported accusations, then the accused -- in this case, plaintiff -- is subjected to public condemnation of him as a murderer and is not merely subjected to an investigation. As a result, defendants' misconduct is more likely to result in the initiation or continuation of publicized criminal proceedings than false accusations by private citizens. Thus, we believe that defendants' status as SBI agents distinguishes this case from *Dobson*.

While not binding authority, we note that other jurisdictions have found that similar conduct by police officers could be found by a reasonable jury to be sufficiently outrageous to support an IIED claim. *See Limone v. United States*, 579 F.3d 79, 99 (1st Cir. 2009) (conclusion that FBI engaged in extreme and outrageous conduct supported by findings that FBI knew that "scapegoats" were not involved in murder "from the moment that [an informant] implicated them" and that "FBI agents nonetheless assisted [the informant] in embellishing his apocryphal tale, helped him to sell that tale to state

authorities and the jury, and covered up their perfidy by stonewalling the scapegoats' petitions for post-conviction relief."); *Pitt v. District of Columbia*, 491 F.3d 494, 506 (D.C. Cir. 2007) (evidence that police officer's arrest affidavit omitted exculpatory evidence and contained at least one false statement, and evidence that one officer tampered with evidence in attempt to link plaintiff to crime supported conclusion by reasonable juror that conduct was sufficiently "outrageous" for IIED claim); *Wagenmann v. Adams*, 829 F.2d 196, 214 (1st Cir. 1987) (holding that where evidence could support inference that officers conspired to arrest plaintiff and have him committed and were "determined to accomplish this objective at all costs and by the nearest means, in manifest derogation of the appellee's civil rights," trial court properly denied motion for judgment notwithstanding the verdict on IIED claim).

We find the reasoning in these cases persuasive and consistent with the analysis North Carolina courts have applied. Accordingly, we hold that plaintiff's complaint sufficiently alleges outrageous conduct and reverse the trial court's dismissal of plaintiff's claim of IIED.

D.   False Imprisonment

False imprisonment is "'the illegal restraint of a person against his will.'"   *Moore v. Evans*, 124 N.C. App. 35, 42, 476

S.E.2d 415, 421 (1996) (quoting *Marlowe v. Piner*, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995)). "A false arrest is an arrest without legal authority and is one means of committing a false imprisonment." *Marlowe*, 119 N.C. App. at 129, 458 S.E.2d 220 at 223.

Plaintiff contends that his release on house arrest constituted false imprisonment. We disagree. As explained by the Supreme Court of the United States:

> False arrest and false imprisonment overlap; the former is a species of the latter. Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is. We shall thus refer to the two torts together as false imprisonment. That tort provides the proper analogy to the cause of action asserted against the present respondents for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*[.]
>
> . . . .
>
> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* -- when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by

> absence of legal process, but by *wrongful institution of* legal process.

*Wallace v. Kato*, 549 U.S. 384, 388-90, 166 L. Ed. 2d 973, 980-81, 127 S. Ct. 1091, 1095-96 (2007) (internal citations and quotation marks omitted).

Plaintiff's complaint alleges that he was arrested only after being indicted by a grand jury. He was then released on house arrest. Plaintiff's complaint fails to allege that he was confined without legal process or other legal authority. While plaintiff's allegation that his detention and house arrest were not supported by probable cause is sufficient to state a claim for malicious prosecution, plaintiff has not, on appeal, cited any authority that would allow him to also proceed with a false imprisonment claim. Accordingly, we affirm the dismissal of this claim.

E.   Public Official Immunity

Public officials sued in their individual capacity are entitled to public official immunity from claims in tort unless their "conduct is malicious, corrupt, or outside the scope of official authority." *Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 205, 468 S.E.2d 846, 852 (1996). "[I]f a plaintiff wishes to sue a public official in his personal or individual capacity, the plaintiff must, at the pleading stage and thereafter, demonstrate that the official's actions (under color of

authority) are commensurate with one of the 'piercing' exceptions." *Id.* at 207, 468 S.E.2d at 853. To withstand a defendant's motion to dismiss a claim based on the defense of public official immunity, the facts alleged in the complaint must support a conclusion that one of the piercing exceptions apply. *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997).

Here, plaintiff's complaint alleges that defendants' conduct was willful, intentional, and malicious. As previously discussed, the facts alleged support an inference that defendants acted maliciously. Therefore, to the extent the trial court dismissed the complaint based on public official immunity with respect to the malicious prosecution and IIED claims, the trial court erred.

## II. Federal Constitutional Claims

Plaintiff argues that his complaint adequately alleged facts to support a § 1983 claim for malicious prosecution against defendants Thomas, Deaver, and Pendergraft in their individual capacities. Plaintiff apparently bases the § 1983 claim upon a violation of plaintiff's Fourth Amendment right to be free from unreasonable seizure, but otherwise makes no attempt to distinguish the § 1983 malicious prosecution claim from the state law malicious prosecution claim. Defendants

argue, however, that they are entitled to qualified immunity for this claim and that the trial court properly dismissed the claim on this basis.

"The defense of qualified immunity shields government officials from personal liability under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Toomer v. Garrett*, 155 N.C. App. 462, 473, 574 S.E.2d 76, 86 (2002) (quoting *Andrews v. Crump*, 144 N.C. App. 68, 75-76, 547 S.E.2d 117, 122 (2001)). "The qualified immunity inquiry requires a determination of whether the right at issue was clearly established at the time it was allegedly violated." *Id.* at 474, 574 S.E.2d at 87.

On appeal, plaintiff makes no argument that defendants violated a clearly established constitutional right. Rather, plaintiff, citing only *Epps v. Duke Univ., Inc.*, 116 N.C. App. 305, 447 S.E.2d 444 (1994), confuses the doctrine of qualified immunity with the doctrine of public official immunity, arguing generally that because "[u]nder the facts alleged, the Defendants could not have acted in good faith[,]" neither immunity defense is available to defendants at this stage of the proceeding.

Plaintiff, therefore, does not make any relevant argument or cite any authority in support of his assertion that defendants are not entitled to qualified immunity for the § 1983 malicious prosecution claim. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). Accordingly, we affirm the trial court's dismissal of plaintiff's § 1983 claims.

## Conclusion

In sum, we reverse the trial court's dismissal of plaintiff's state law malicious prosecution and IIED claims, as neither of those claims are barred by the statute of limitations or public official immunity and the allegations of the complaint are legally sufficient to state a claim for relief. As to the remaining claims, we affirm.

Affirmed in part; reversed in part.

Judges ROBERT C. HUNTER and McCULLOUGH concur.