**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-7171**

JOSHUA T. GRIFFIN,

Plaintiff - Appellant,

v.

SHANNON MORTIER, In her official and individual capacities; VAN DUNCAN, In his official and individual capacities; GLEN MATAYABAS, In his official and individual capacities; SCOTT ALLEN, In his official and individual capacities; BUNCOMBE COUNTY SHERIFF'S DEPARTMENT; BUNCOMBE COUNTY; JOHN DOE, In his official and individual capacities; OTHER UNKNOWN DEFENDANTS,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, Chief District Judge. (1:18-cv-00098-MR-WCM)

Submitted: October 23, 2020                    Decided: November 30, 2020

Before WYNN and HARRIS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

Walter E. Daniels, III, DANIELS LAW FIRM, PC, Asheville, North Carolina, for Appellant. Natalia K. Isenberg, Raleigh, North Carolina, William A. Bulfer, TEAGUE CAMPBELL DENNIS & GORHAM, LLP, Asheville, North Carolina; Adam F. Peoples, HALL BOOTH SMITH PC, Asheville, North Carolina; J. Brandon Freeman,

BUNCOMBE COUNTY ATTORNEY'S OFFICE, Asheville, North Carolina, for Appellees.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joshua T. Griffin appeals from the district court's orders accepting the recommendations of the magistrate judge, granting the defendants' motions to dismiss, and dismissing his complaint, in which Griffin alleged claims pursuant to 42 U.S.C. § 1983 and North Carolina law. Griffin's claims are predicated on his April 2015 incarceration at the Buncombe County Detention Center ("BCDC") in North Carolina, during which he experienced significant health issues. The complaint named as defendants in their individual and official capacities: Shannon Mortier, a registered nurse and a medical supervisor at BCDC; Glen Matayabas, a supervisor at BCDC; Scott Allen, the Chief Deputy of BCDC; and Buncombe County Sheriff Van Duncan.[1]

The district court dismissed Griffin's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, we affirm the district court's dismissal orders in substantial part. We vacate, however, the dismissal of Griffin's claims against Nurse Mortier for deliberate indifference to his serious

---

[1] Griffin's complaint also alleged claims against the Buncombe County Sheriff's Department and Buncombe County. Griffin waived appellate review of the district court's dismissal of the claims against those entities, however, by failing to object to the magistrate judge's recommendation to dismiss those claims. *See Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017). Additionally, the complaint named as defendants an unidentified BCDC guard and other unknown persons. The district court dismissed without prejudice those unidentified defendants because Griffin failed to timely effect service of process on them. *See* Fed. R. Civ. P. 4(m). Griffin's opening brief does not contest that ruling. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (alterations and internal quotation marks omitted)). Our references to "the defendants" include only Nurse Mortier, BCDC Supervisor Matayabas, BCDC Chief Deputy Allen, and Sheriff Van Duncan.

medical needs and intentional infliction of emotional distress ("IIED"). We remand for further proceedings on those claims.

I.

Because the district court dismissed Griffin's complaint pursuant to Rule 12(b)(6), "we accept and recite the alleged facts in the light most favorable to [Griffin]." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 680 (4th Cir. 2018). The complaint alleges that, on April 13, 2015, Griffin was arrested for driving while impaired and sentenced to 30 days in jail. According to the complaint, Griffin was booked into BCDC on April 14, 2015, with a plan to place him on detoxification watch.

On April 16, Griffin suffered a seizure when sitting down for lunch. During the seizure, Griffin fell and hit his head on the floor; blood began flowing from Griffin's right ear. A guard witnessed Griffin's seizure and called for medical help. Nurse Mortier responded and observed that Griffin's nose was bleeding and that he was acting in an unusual and confused manner. Griffin told Mortier that his right ear hurt. Without evaluating, examining, or treating Griffin, Mortier placed him in a holding cell for observation. While in the holding cell, Griffin became increasingly confused. Griffin then suffered two additional seizures, causing him to again hit his head on the floor. After these seizures, Griffin's respirations were shallow; a deep sternal rub was initiated, and Griffin's respirations resumed. An unidentified person visited Griffin's cell and observed that Griffin was still seizing on the floor, was unable to communicate, and was breathing in an abnormal way.

4

The complaint alleges that someone at BCDC called for an ambulance at 12:25 p.m., and Griffin was transported to the hospital where a CT scan of his head was performed, revealing a skull fracture and bruising and bleeding around the brain. Griffin subsequently underwent a craniotomy. Griffin alleges that his head injuries have caused him permanent health problems, including seizures, loss of brain function, memory loss, loss of hearing, extreme migraines, irritability, fatigue, anxiety, depression, and post-traumatic stress disorder.

Based on those allegations, the complaint alleged six claims against the defendants—in both their individual and official capacities—pursuant to § 1983 and North Carolina law. Specifically, the complaint alleged claims for (1) deliberate indifference to Griffin's serious medical needs in violation of the Eighth Amendment; (2) respondeat superior and supervisory liability;[2] (3) failure to train and to implement proper policies under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (4) civil conspiracy under § 1983; (5) deliberate indifference to Griffin's serious medical needs under § 27 of Article I of the North Carolina Constitution; and (6) IIED.

The defendants moved to dismiss the complaint pursuant to Rule 12(b)(6). The district court, in separate orders, adopted the magistrate judge's recommendations that the

---

[2] Griffin's claim for respondeat superior and supervisory liability was alleged against BCDC Chief Deputy Allen and Sheriff Van Duncan. The complaint also alleged, however, that BCDC Supervisor Matayabas was responsible for Griffin's injuries predicated on Matayabas's supervisory role.

defendants' motions to dismiss be granted and dismissed the complaint. Griffin appealed the district court's orders granting the defendants' motion to dismiss.

## II.

We review an order granting a Rule 12(b)(6) motion de novo. *Feminist Majority Found.*, 911 F.3d at 685. "In conducting such a review, we are obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff[]." *Id.* "However, legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.

## A.

Our analysis begins with the district court's dismissal of Griffin's deliberate indifference claims under the Eighth Amendment and § 27 of Article I of the North Carolina Constitution. We have explained that "a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the

6

Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). In order to state a plausible Eighth Amendment deliberate indifference claim, the plaintiff is required to allege both "an objective component and a subjective component." *Id.* "That is, the plaintiff must [allege] that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

We have recognized that "[t]he objective component of a deliberate indifference claim is satisfied by a serious medical condition." *Id.* "And a medical condition is serious when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted).

The subjective component is met by demonstrating a defendant's deliberate indifference. *Id.* at 357. "The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence,' but the standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, "a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* (alteration and internal quotation marks omitted). Mere disagreements between an inmate and prison medical staff over the inmate's medical care, however, generally do not establish deliberate indifference. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

7

Like the Eighth Amendment to the United States Constitution, the North Carolina Constitution prohibits "cruel or unusual punishments." N.C. Const. art. I, § 27. The Supreme Court of North Carolina has interpreted that constitutional provision to require the state to provide adequate medical care to inmates. *Medley v. N.C. Dep't of Corr.*, 412 S.E.2d 654, 659 (N.C. 1992). The parties agree on appeal that the analysis of a deliberate indifference claim related to medical care under the North Carolina Constitution is identical to the analysis of such a claim under the Eighth Amendment.

Consistent with Griffin's opening brief, we focus on Griffin's deliberate indifference claims against Nurse Mortier.[3] Starting with the objective components of those claims, we are satisfied that the complaint sufficiently alleges that Griffin suffered from at least two serious medical conditions: a seizure and a head injury resulting from that seizure.

As for the subjective components of Griffin's claims, we conclude that Griffin has plausibly alleged that Nurse Mortier was deliberately indifferent to those serious medical conditions. The complaint alleges that Mortier knew that Griffin suffered a seizure, fell, and hit his head. The complaint further alleges that Mortier knew that Griffin had ear pain after the fall and that Mortier observed Griffin bleeding from the nose and acting in an

---

[3] Griffin's opening brief does not specifically address any deliberate indifference claims under the Eighth Amendment or the North Carolina Constitution against BCDC Supervisor Matayabas, BCDC Chief Deputy Allen, or Sheriff Van Duncan. Nor does Griffin's opening brief particularly address his claims for civil conspiracy and IIED against those defendants. Accordingly, Griffin has waived any challenge to the dismissal of those claims against those defendants. *See Grayson O Co.*, 856 F.3d at 316.

8

unusual and confused manner. According to the complaint, rather than evaluate, examine, or treat Griffin, Mortier simply placed him in a holding cell. While in the holding cell, Griffin became even more confused, but no medical action was taken. Only after Griffin experienced a second seizure and hit his head on the floor of the holding cell did he receive any medical care. We are satisfied that these allegations, at the Rule 12(b)(6) stage, are sufficient to state the subjective components of Griffin's deliberate indifference claims against Mortier. *See Estelle*, 429 U.S. at 104–05 (ruling that deliberate indifference can be shown by intentional denial of medical care or delay in providing such care).

Insofar as Nurse Mortier argues against Griffin's deliberate indifference claims by characterizing those claims as presenting mere disagreements over the proper course of treatment for his serious medical conditions, those characterizations are inaccurate because the complaint alleges that Griffin received *no treatment at all* until he suffered two additional seizures. *See Gordon*, 937 F.3d at 359 n.14 (rejecting argument that plaintiff's deliberate indifference claim should fail because he merely disagreed with course of treatment and explaining that plaintiff's claim was predicated on "receiv[ing] *no treatment at all*"). And while Mortier correctly observes that, in the Eighth Amendment context, questions of medical judgment are generally "not subject to judicial review," *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975), Griffin's complaint read in his favor does not indicate that Mortier exercised her medical judgment at all in these circumstances. For those reasons, we conclude that the district court erred by dismissing Griffin's deliberate indifference claims against Mortier and vacate the dismissal of those claims.

9

B.

Next, Griffin argues that that the district court erred by dismissing his supervisory liability claim. A supervisor can be held liable under § 1983 where: "(1) he knew that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) his response showed deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) . . . there was an affirmative causal link between his inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (internal quotation marks omitted).

Our review of the complaint leads us to conclude that Griffin failed to state a plausible supervisory liability claim against any of the purported supervisory defendants—that is, BCDC Supervisor Matayabas, BCDC Chief Deputy Allen, and Sheriff Van Duncan. Indeed, the complaint fails to sufficiently allege that the supervisory defendants knew that Nurse Mortier or any subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." *Id.* (internal quotation marks omitted). Accordingly, we affirm the dismissal of Griffin's supervisory liability claim.

C.

Griffin also contends that the district court erred by dismissing his *Monell* claim. The complaint's allegations in support of that claim, however, consist of naked assertions that the Sheriff of Buncombe County failed to train and implement proper policies. Such allegations "are not entitled to the presumption of truth." *Wikimedia Found.*, 857 F.3d at 208 (internal quotation marks omitted). We thus affirm the dismissal of Griffin's *Monell* claim.

10

D.

Griffin next contests the district court's dismissal of his § 1983 civil conspiracy claim against Nurse Mortier. To state a civil conspiracy claim, a plaintiff must plausibly allege that two persons "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of a constitutional right." *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (alterations and internal quotation marks omitted). We conclude that Griffin's civil conspiracy claim fails because the complaint does not "plausibly suggest" that Mortier agreed with anyone to "violate [Griffin's] civil rights." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, ___, No. 19-1394, 2020 WL 5523552, at *14 (4th Cir. Sept. 15, 2020). We therefore affirm the dismissal of Griffin's civil conspiracy claim.

E.

Finally, Griffin challenges the district court's dismissal of his IIED claim. Under North Carolina law, the elements of an IIED claim are "(1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 794 S.E.2d 439, 446 (N.C. 2016) (alterations and internal quotation marks omitted). As to the first element, "extreme and outrageous conduct is that which exceeds all bounds of decency tolerated by society[,] and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations and internal quotation marks omitted). The second element requires a showing that the defendant intended to cause severe emotional distress or that the defendant acted with "reckless indifference to the likelihood" that her actions would "cause severe emotional distress."

11

*Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981). Regarding the third element, "the term severe emotional distress means any . . . type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (internal quotation marks omitted).

As Griffin's challenge to the dismissal of his IIED claim focuses specifically on Nurse Mortier's conduct, our assessment of the claim does so as well. Having reviewed the description of Mortier's conduct alleged in the complaint, we are satisfied that Griffin states a plausible IIED claim against her. As to the first element, the complaint sufficiently alleges that Mortier acted in an "extreme and outrageous" manner when she failed to examine or treat Griffin after learning that he had suffered a seizure and struck his head. *Turner*, 794 S.E.2d at 446. And, providing further support on the first element, the complaint alleges that Mortier placed Griffin in a holding cell—where he could apparently further injure himself—and that no medical action was taken when Griffin became increasingly disoriented while in the holding cell.

Regarding the second element, the complaint adequately alleges that Nurse Mortier exhibited "reckless indifference to the likelihood" that her conduct would cause Griffin severe emotional distress. *Dickens*, 276 S.E.2d at 335. Indeed, a medical professional's placement of a person who had a seizure and suffered a head injury in a holding cell without examination or treatment can support a claim that the medical professional acted with reckless indifference to the possibility that the person may suffer further severe physical and emotional injury.

12

As to the third element, the complaint alleges that Griffin suffers from permanent health problems, including seizures, loss of brain function, memory loss, extreme migraines, anxiety, depression, and posttraumatic stress disorder. We conclude that those injuries sufficiently allege a "*severe and disabling* emotional or mental condition" that rises to the level of "severe emotional distress." *Waddle*, 414 S.E.2d at 27 (internal quotation marks omitted). Because the complaint states a plausible IIED claim against Nurse Mortier, we vacate the district court's dismissal of that claim.

IV.

Pursuant to the foregoing, we grant the motion for leave to proceed in forma pauperis, vacate the district court's dismissal of Griffin's claims against Nurse Mortier for deliberate indifference and IIED, and remand for further proceedings on those claims. We affirm the district court's dismissal of all other claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*